Brodrick Dechone DELANE a/k/a
Broderick Shun Delane a/k/a
Shaun Scott, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–10–00698–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 2, 2012.

Discretionary Review Refused
June 13, 2012.

Ernest Davila Houston, TX, for Appellant.

Mandy Goldman Miller, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, HIGLEY, and BROWN.

## OPINION

TERRY JENNINGS, Justice.

A jury found appellant, Brodrick Dechone Delane, also known as Broderick Shun Delane, also known as Shaun Scott, guilty of the felony offense of driving while intoxicated.[1] After appellant pleaded true to two enhancement allegations that he had twice been previously convicted of felony offenses, the jury assessed his punishment at confinement for thirty-five years.[2] In two issues, appellant contends that the evidence is legally and factually insufficient to support his conviction and the trial court erred in admitting "unreliable and irrelevant scientific evidence."

We reverse and remand.

## Background

A Harris County grand jury issued a true bill of indictment, accusing appellant of driving while intoxicated "by reason of the introduction of a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." Prior to trial, appellant filed a "motion in limine to suppress drug/medication evidence," seeking to suppress "audio or visual evidence pertaining directly or indirectly to [his] use of any drug or medication, on grounds that such evidence is irrelevant and its effect would be more prejudicial than probative without expert scientific testimony to provide the proper foundation."

During the trial court's hearing on his motion to suppress evidence, appellant asserted that the State was required to present expert testimony about his alleged ingestion of medications and the effects of the medications on him. The State responded that, under the circumstances and given the training, education, and experience of the police officer who had arrested appellant, the officer was qualified to testify to his opinion that appellant was impaired by the medications. The trial court denied appellant's motion.

At trial, Houston Police Department ("HPD") Officer L. Morrison testified that on September 21, 2008, while assigned to protect a "point of distribution" ("POD") that had been set up to assist Houstonians in the aftermath of Hurricane Ike, a woman told him about a man who was driving a car "crazy," had almost hit her car, and had run "a bunch of cars off the road." The woman identified the car, which appellant was driving. Morrison followed appellant, who was traveling at ten-miles per hour in a thirty-mile per hour zone, and Morrison saw appellant travel through a stop sign and a red blinking traffic light without stopping or yielding to other traffic. Appellant almost caused his car to strike another car, which had honked its

---

1. *See* TEX. PENAL CODE ANN. §§ 49.04(a), 49.09(b)(2) (Vernon Supp. 2011). The offense of driving while intoxicated (being intoxicated while operating a motor vehicle in a public place) ("DWI") is ordinarily a Class B misdemeanor. *See id.* § 49.04(b). However, it is elevated to "a felony of the third degree if it is shown on the trial of the offense that the [accused] has previously been convicted ... two times of any other offense relating to the operating of a motor vehicle while intoxicat-

ed." *See id.* § 49.09(b)(2). Here, appellant stipulated that he had twice been convicted of driving while intoxicated before the instant offense.

2. *See id.* § 12.42(d) (Vernon Supp. 2011) (providing that range of confinement for person's third felony conviction, other than state jail felony, is twenty-five years to ninety-nine years or life).

horn and maneuvered to avoid appellant's car. Appellant "bounc[ed]" his car "from curb to curb" and drove in a "dangerous" manner. Morrison activated his emergency lights, and appellant, in trying to stop his car, "jumped" a curb, drove across some grass, and almost hit a fence. After appellant stepped out of his car, he held onto it for support. After Morrison approached and identified himself to appellant, he explained that he had stopped appellant for reckless driving. Appellant then "fumbled" as he looked for his identification, and he also slurred his speech. However, Morrison did not detect any odor of alcohol.

Officer Morrison described appellant as "slow to react," and he decided to administer field-sobriety tests to appellant. Appellant was not able to perform the "one-leg-stand" and "walk-and-turn" tests because he could not stand on his own. After Morrison asked appellant if he had any "medical issues," appellant stated that he was "fine." Morrison then administered the horizontal-gaze-nystagmus ("HGN") test to appellant, who exhibited the "maximum number of clues" to indicate intoxication. Based upon the results of this test, Morrison "knew that [appellant] was under the influence of a central nervous system depressant." Morrison also administered to appellant the "vertical nystagmus" test, during which appellant exhibited "both clues" and "immediate onset," which demonstrated "a very high level of intoxicants" in appellant's system. Finally, Morrison administered to appellant a "convergence test," which showed that appellant tested "positive for that clue as well." Morrison then helped appellant into Morrison's patrol car because appellant was not able to walk without support.

Appellant told Officer Morrison that he had taken two different prescription medications. After Morrison asked appellant why he was taking medications, appellant was "very difficult to understand," had "very slurred speech," and mumbled. When Morrison conducted an inventory of appellant's car, he found two prescription medication bottles, one containing Lisinopril and the other Pyridoxine, which belonged to appellant. Morrison explained that he was "familiar" with Lisinopril, a heart medication, because he had a "nursing drug handbook," which, he explained, stated that Lisinopril "causes drowsiness and ataxia," "the inability to walk."

Officer Morrison further testified that Lisinopril would not have caused appellant to exhibit the "indicators" that Morrison had observed when he administered the HGN test to appellant. After appellant objected to this evidence on the ground that it constituted "scientific testimony," the trial court overruled the objection. Morrison then explained that even though Lisinopril "caused ataxia and drowsiness, it is not a [central nervous system] depressant to where it will cause overwhelming signs," like those appellant exhibited at the scene. When asked whether he had observed any warning labels on the Lisinopril prescription bottle,[3] Morrison stated that the bottle contained a warning label stating, "Do not drive or operate heavy machinery."

In regard to Pyridoxine, Officer Morrison explained that his drug handbook for nurses stated that it also caused ataxia. After referring to his notes in his arrest report, in which he had written that Pyridoxine causes ataxia and malaise, Morrison described these conditions as being "real laid back" and "feeling kind of lethargic." According to Morrison, the nursing hand-

3. When appellant objected to this question as calling for hearsay, the trial court overruled the objection, and appellant does not challenge this ruling on appeal.

book also stated, in regard to both medications, that users should "avoid alcoholic beverages or any other depressant." Morrison opined that Pyridoxine "is not a strong depressant" and would not have caused the HGN "clues" exhibited by appellant. Morrison also noted that the Pyridoxine bottle also contained a label stating, "Warning, do not drive or operate heavy machinery while taking this medication." Morrison opined that appellant was intoxicated by use of "drugs based on the lack of odor of any alcoholic beverage."

Officer Morrison transported appellant to a police station, where appellant declined to provide a breath sample, which precluded Morrison from obtaining "additional information" on appellant's drug use. He explained that an HPD drug-recognition expert could only have performed a twelve-step examination of appellant if he had provided a breath sample, which was necessary to rule out alcohol or quantify any "additive effect." Morrison noted that when a defendant refuses a breath test, an officer "can't continue with the drug evaluation after that."

Officer Morrison testified that although he did not have a video camera in his patrol car, he did videotape appellant's performance on the sobriety tests at the police station. Morrison explained that appellant performed "a lot better at the station," and he opined that "whatever [appellant] was on had time to pretty much go through his system because he was able to walk a lot better." Although Morrison could understand appellant "a lot better" at the station, he opined that appellant's "mental faculties" remained "about the same" at the station. When Morrison asked appellant to perform additional sobriety tests, appellant was not able to keep his hands at his side, his perception of "time and distance" was "way off," and he swayed. Morrison noted that appellant failed a one-leg stand test and a walk-and-turn test, which demonstrated that he had lost the normal use of his mental and physical faculties. The videotape, which the State introduced into evidence, shows appellant's performance of the tests at the station and reveals that at the conclusion of the walk-and-turn test, appellant stated, "I am under the influence of my medication. It is making me drowsy."

Officer Morrison stated his "personal opinion" that appellant had "something else on board besides" his prescription medications because appellant's "pupils were pinpoint at the station." Morrison explained,

There is only one drug that would cause your pupils to be real pinpoint even in ambient lighting and that is a narcotic analgesic, a pain pill or a pain medication. That is the only medication that will make both pupils real tiny which his were. They were real pinpoint approximately three millimeters or 3.5 millimeters which indicated that [appellant] was on pain medication besides a [central nervous system] depressant.

Morrison then explained that he had been a Houston police officer for eighteen and one-half years and had made over one thousand arrests for driving-while-intoxicated offenses. Based upon his training and experience and his observations, he opined that appellant was intoxicated.

On cross-examination, when asked about his qualifications to make statements about the "affects of medications on the central nervous system," Morrison admitted that he had taken a "course" to be a drug-recognition expert, but he had not taken the exam for certification. He further agreed that to be considered a drug-recognition expert, he would first have to pass the certification exam. However, Morrison reiterated that he was offering his opinions based upon his training and expe-

rience, and he explained that Lisinopril, which was taken by his wife, did not affect her physical and mental faculties.

Officer Morrison agreed that although he suspected that "some sort of compound or chemical" was in appellant's system, he conducted "standard" field-sobriety tests without consulting a drug-recognition expert. And he acknowledged that a drug-recognition expert's evaluation of a defendant would consist of twelve parts and would include further evaluation of the defendant's pupils as well as blood pressure tests. Morrison also agreed that without a drug-recognition expert or "blood work," it would be "impossible to have anything other than a subjective opinion about what might be in" a defendant's system.

Appellant testified that at the time of his arrest, he had been working on repairing his house, which had been severely damaged by Hurricane Ike. On the day of his arrest, appellant had finished a long day of repairing his house, he was dehydrated and exhausted, and he had not slept in several days. Appellant, who was taking "non-narcotic" medicine for his heart and his high blood pressure, noted that when his blood pressure is high, he gets "dizzy" and "drowsy" and "not being able to have food to eat to take this type of medication cause[s] extra ... dysfunction to [his] body."

Appellant explained that just prior to his arrest, he was driving his car to the house of his mother-in-law for a meal. As he was driving, he was dodging debris in the street that had been left there from the hurricane. He explained that when he took his eyes off the road to reach for his cellular telephone, which was on the floorboard of his car, his car scraped the side of a curb, which caused his tire to blow out and him to hit his stomach and chest on the steering wheel of his car. After he exited his car and leaned against it to catch his breath, Officer Morrison, approximately three or four minutes later, drove by and appellant flagged him down to ask for assistance.

Officer Morrison asked appellant for his identification and if he was "all right." Appellant explained that he could not talk because he was dehydrated, hungry, tired, and just had an accident; he had not eaten since the day before and had been awake for three days. After Morrison asked appellant how much he had been drinking, appellant explained that he did not drink, but told Morrison that he takes "high blood pressure pills, TB medication," and another medication. Appellant told Morrison that the medication was in his car, and Morrison retrieved the medication and told appellant that he was not "supposed to be operating this vehicle on medication." Appellant explained that the medication was "prescribed by [his] doctor."

Officer Morrison then looked at appellant's eyes with a flashlight and took him to the police station, where appellant attempted to perform various sobriety tests pursuant to Morrison's instructions. Appellant stated that he was "sluggish" as he had suffered a head injury.

Appellant further testified that he had taken his blood pressure pill "right before" he drove his car. He had noticed that his "blood pressure was up because [he] was lightheaded" and "dizzy." Appellant explained that he feels lightheaded, dizzy, and weak when he has not been taking his blood pressure medication and, once he takes his medication, "after awhile" he "start[s] feeling better." Appellant estimated that it generally takes 45 minutes for the medication to "kick in," he took his pill around 3:15 p.m., and he entered in his car around 4:00 p.m.

On cross-examination, appellant admitted that he had twice been previously convicted of felony offenses. He agreed that he felt lightheaded when he left his house, but he noted that he could feel the medication working. When the State asked appellant a series of questions about how often his medications made him dizzy, appellant answered sometimes "one time out of a week" or "two days out of the week." Appellant also noted that the warning labels on his medications cautioned that he should not operate heavy equipment "unless familiar with medication." Appellant explained that he was familiar with the medications because he had been taking them for three years. Although the medications periodically make him dizzy, appellant noted that he cannot stop this and sometimes the dizziness "comes out of nowhere."

### Sufficiency of the Evidence

■ In his second issue, appellant argues that the evidence is legally and factually insufficient to support his conviction for driving while intoxicated "due to medication" because it "was weak, unreliable, and irrelevant." Appellant bases his argument on the arguments made in his first issue, in which he attacks the "reliability" of Officer Morrison's testimony about appellant's medications.

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979). Evidence is legally insufficient when the "only proper verdict" is acquittal. *Tibbs v. Florida,* 457 U.S. 31, 41–42, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982). Our role is that of a due process safe-guard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988). We give deference to the responsibility of the fact finder to fairly resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from the facts. *Williams v. State,* 235 S.W.3d 742, 750 (Tex.Crim. App.2007). However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.* We now review the factual sufficiency of the evidence under the same appellate standard of review as that for legal sufficiency. *Ervin v. State,* 331 S.W.3d 49, 52–56 (Tex.App.-Houston [1st Dist.] 2010, pet. ref'd) (citing *Brooks v. State,* 323 S.W.3d 893, 894–913 (Tex.Crim.App.2010)).

■ A person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE ANN. § 49.04(a) (Vernon Supp. 2011). The term "intoxicated" means (1) not having the normal use of mental and physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of those substances, or any substance into the body, or (2) having an alcohol concentration of 0.08 or more. *Id.* at § 49.01(2) (Vernon 2011). The substance that causes intoxication is not an element of the offense of driving while intoxicated that must be proved at trial. *See id.* § 49.04(a). Thus, the State can prove intoxication without proof of the type of intoxicant. *See Gray v. State,* 152 S.W.3d 125, 132 (Tex.Crim.App.2004).

Here, the jury heard the testimony of Officer Morrison, who explained that a witness had reported that appellant had been driving dangerously. Morrison followed

appellant, who Morrison saw driving in a dangerous manner. Morrison explained that, from the tests he attempted to administer to appellant at the scene, he believed appellant to be intoxicated. Appellant had no odor of alcohol on his person, so Morrison concluded that the intoxication was due to the ingestion of some type of drug. Morrison testified that appellant's pupils exhibited signs consistent with intoxication by a drug. The jury was also presented with the videotape, which shows that appellant, at the police station, had difficulty following Morrison's instructions. Moreover, on the videotape, appellant indicates that he was having trouble understanding Morrison because his medications were making him "drowsy."

During his testimony, appellant denied being intoxicated, but, on cross-examination, he admitted that the medications that he takes sometimes make him "dizzy." The jury was entitled to consider all of this evidence in finding that appellant was driving his car while intoxicated. *See Cotton v. State*, 686 S.W.2d 140, 143 n. 3 (Tex. Crim.App.1985) (enumerating nonexclusive list of signs recognized as evidence of intoxication, including staggered gait and slurred speech); *Paschall v. State*, 285 S.W.3d 166, 177 (Tex.App.-Fort Worth 2009, pet. ref'd) (holding evidence sufficient based, in part, on officer's testimony regarding defendant's performance on field-sobriety tests, videotape of field sobriety tests, and officer's opinion that defendant had lost normal use of his mental and physical faculties); *Compton v. State*, 120 S.W.3d 375, 380 (Tex.App.-Texarkana 2003, pet. ref'd) (concluding that evidence was sufficient to support DWI conviction when jury heard officer's testimony surrounding stop and viewed video-recording of defendant's performance of field-sobriety tests); *Henderson v. State*, 29 S.W.3d 616, 622 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd) (concluding that officer's

testimony "that an individual is intoxicated is probative evidence of intoxication"); *see also* TEX. TRANSP. CODE ANN. § 724.061 (Vernon 2011) ("A person's refusal of a request by an officer to submit to the taking of a specimen of breath or blood, whether the refusal was express or the result of an intentional failure to give the specimen, may be introduced into evidence at the person's trial.").

Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant committed the offense of driving while intoxicated. Accordingly, we hold that the evidence is sufficient to support appellant's conviction.

We overrule appellant's second issue.

## Admission of Evidence

█ In his first issue, appellant argues that the trial court erred in admitting "unreliable and irrelevant scientific evidence" to prove that he "was intoxicated due to medication" because Officer Morrison "was not certified as a drug recognition expert." He also complains about Morrison's testimony regarding the effects of the medications. Appellant argues that because the State's evidence is not "sound and verifiable," it is irrelevant. He asserts that the trial court "should not have admitted the unreliable evidence of an officer not adequately qualified under the rules to provide scientific evidence of intoxication due to medication." Appellant further asserts that the State did not present any evidence of "the exact times of ingestion" or the "half life of the drug," the jury could not have determined the time between when he took his medications and "how it may have affected intoxication," and the State did not "sufficiently establish[ ]" that his poor performance on the

sobriety tests was "due to intoxication due to medication."

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *Layton v. State,* 280 S.W.3d 235, 240 (Tex.Crim.App.2009). We will uphold a trial court's decision to admit evidence as long as the result is not outside the zone of reasonable disagreement. *Id.*

In support of his arguments, appellant relies on *Layton,* in which the Texas Court of Criminal Appeals held that "[w]ithout expert testimony to provide the foundation required to admit scientific evidence," evidence regarding a defendant's "use of prescription medications" is not relevant. 280 S.W.3d at 242. In *Layton,* the defendant was convicted of the offense of driving while intoxicated by the introduction of alcohol into the body. *Id.* at 237. The defendant objected to the admission of evidence pertaining to his use of Xanax and Valium. *Id.* Specifically, a videotape recording of the defendant's traffic stop showed that the arresting officer had stopped the defendant at approximately 4:00 a.m. because the car that he was driving was protruding into an intersection. *Id.* The arresting officer asked the defendant if he had taken any medications, and the defendant acknowledged that he had taken both Xanax and Valium pursuant to his doctor's prescriptions for the treatment of his high blood pressure. *Id.* The defendant then clarified that he had taken Valium at 2:00 p.m. the previous afternoon, but he had not taken any Xanax since the day before the traffic stop. *Id.* The arresting officer commented that the medications were for "anxiety," not high blood pressure, and he asked the defendant whether he had read the "inserts" included with the medications. *Id.* The officer further told the defendant that "it

probably was not a good idea to be drinking 'on top of those.'" *Id.*

The defendant contended that such evidence "was inadmissible without the State proving the accuracy and reliability of the evidence and its relevance to whether [he] was intoxicated." *Id.* at 240. He "noted that without extrapolation on the Xanax and Valium to determine their effect on the body, the State had not shown their relevance to the issue in question." *Id.* The defendant argued that this evidence should not have been admitted "without expert testimony to provide foundation." *Id.* at 237–38. The trial court admitted the evidence over the defendant's objection. *Id.*

On appeal, the court of criminal appeals characterized the defendant's challenge as follows:

> Appellant's contention on appeal is not that the evidence of his prescription-drug use is irrelevant per se, but that the relevance is conditional upon proof that it is sound and verifiable. Appellant argues that without that showing, the evidence is not reliable, and, therefore, irrelevant.

*Id.* at 241. The court explained that "[w]hen the relevance of evidence depends upon the fulfillment of a condition of fact, the court may admit the evidence contingent upon the introduction of evidence sufficient to support a finding of the fulfillment of the condition." *Id.* (citing Tex.R. Evid. 104(b)). The court further explained that "[r]eliability of scientific evidence demands a certain technical showing and depends on whether the evidence has a basis in sound scientific methodology." *Id.* (citing *Jordan v. State,* 928 S.W.2d 550, 555 (Tex.Crim.App.1996)).

The court then set forth, in significant detail, a trial court's obligation in regard to the admission of scientific evidence:

Scientific evidence has the ability to mislead a jury that is not properly equipped to judge the probative force of the evidence. Pursuant to Rule 702, it is the responsibility of the trial court to determine whether the scientific evidence offered is sufficiently reliable, as well as relevant, to help the jury in reaching accurate results. This places the trial judge in the role of a "gatekeeper," whose responsibility it is to weed out inadmissible evidence based on a lack of reliability. The proponent of scientific evidence bears the burden of proving to the trial court, by clear and convincing evidence, that the evidence is sufficiently relevant and reliable to assist the jury in determining a fact in issue.

We have previously asserted that evidence derived from a scientific theory must meet three criteria in order to be reliable in any given case: "(a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; and [ (c) ] the technique must have been properly applied on the occasion in question." We also identified an nonexclusive list of factors that could influence a trial court's determination of reliability. These include: (1) the extent to which the theory and procedure are accepted as valid by the relevant scientific community; (2) the technique's potential rate of error; (3) the availability of experts to test and assess the method or technique; (4) the clarity and precision with which the underlying scientific premise and approach can be explained to the court; and (5) the knowledge and experience of the person(s) who applied the methodology on the occasion in question.

*Id.* (citations omitted). Applying these principles regarding the admission of scientific evidence, the court noted that, in the case before it, there was no evidence as to the dosage of the medications taken by the defendant, the exact times of ingestion, or the half-life of the drugs in the human body. *Id.* at 241–42. The court further noted that, in light of the length of time between the ingestion of the medications and the time of the defendant's arrest, lay jurors were "not in a position to determine whether Xanax and Valium, taken more than 12 hours before arrest, would have any effect on [the defendant's] intoxication." *Id.* at 242. Finally, the court noted that there was no testimony indicating that the arresting officer had any medical knowledge regarding the uses of Xanax and Valium, or about the effect of combining the medications with alcohol. *Id.* Thus, the court of criminal appeals held that the trial court had erred in admitting evidence pertaining to the defendant's use of Xanax and Valium "without the State first showing that the evidence was relevant" to intoxication. *Id.*

Here, the State contends that *Layton* is distinguishable because, in that case, the jury charge defined intoxication by reference only to alcohol, so the evidence pertaining to the narcotics was irrelevant. Although *Layton* is distinguishable on this point, the principles regarding the admission of scientific testimony that the court of criminal appeals set forth in *Layton* apply to our review of the trial court's admission of Officer Morrison's testimony about the prescription medications that Morrison located in appellant's car and other evidence regarding these medications.

In support of its argument that Officer Morrison's testimony was both relevant and reliable and he was qualified to offer his opinions, the State notes that Morrison testified that he had significant experience as an officer and had made over 1000 arrests for driving-while-intoxicated offenses, he had taken a field-sobriety-testing detection course, and he had taken a

drug-recognition-expert course in which he had learned about the "seven drug categories," the ten systems of the human body, and "what the specific drugs do as far as the signs and symptoms to impair a person's ability to operate a motor vehicle safely." Morrison also had previously worked as a mortician and an emergency medical technician.

However, Officer Morrison conceded that he was not certified by HPD as a drug-recognition expert and had not taken the exam to obtain certification. The record establishes that HPD employs drug-recognition experts, Morrison is not one of them, and Morrison failed to consult a drug-recognition expert about appellant's condition. Morrison agreed that he did not conduct the standard twelve-step examination that would have been conducted by a drug-recognition expert, and he explained that he did not contact such an expert in accord with HPD policy after appellant refused a breath test. Morrison's testimony does not reveal that he had expert knowledge about the medications that appellant had taken or their effects on patients. He could state only that he was "familiar" with the medications based upon his review of a drug handbook for nurses, which Morrison consulted in conjunction with appellant's arrest. Thus, there is no evidence that Morrison had previously studied or read about the medications and no evidence that he had any personal experience or training regarding the medications, other than his anecdotal report as to how one of the medications had generally affected his wife in the past.

Nevertheless, the trial court permitted Officer Morrison to testify, in great detail, about these medications and their effects both generally and specifically in regard to appellant. Morrison was permitted to compare how one of the medications affected his wife with how he opined that it had affected appellant. Morrison was also allowed to refer to general statements contained in a drug handbook for nurses regarding these medications, explain the symptoms and side effects of these medications, and define to the jury the medical terms contained in the handbook. Yet there is no evidence that Morrison had any specialized knowledge about these medical terms. More importantly, Morrison was allowed to specifically state that the medications could not have caused the "overwhelming signs" of intoxication or the HGN clues exhibited by appellant. Significantly, based upon this "expert" testimony, Morrison offered his opinion that appellant had "something else on board" besides his prescription medications.

The trial court also permitted Morrison to testify that once at the police station, appellant was "a lot better" because "whatever" appellant had in his system had "time to pretty much go through his system." Morrison presented no foundation for his testimony regarding the length of time that these medications could have affected appellant or how these medications would have affected "whatever" other narcotic Morrison suspected that appellant had "on board."

We conclude that the record before us demonstrates that Officer Morrison's testimony concerning the medications at issue was neither relevant nor reliable and that Morrison was not qualified to offer such detailed testimony concerning appellant's prescription medications or his understanding of the effects of the prescriptions on appellant. Accordingly, we hold that the trial court abused its discretion in allowing Morrison to testify regarding his opinion on these medications in conjunction with his ultimate opinion on appellant's intoxication.

Having concluded that the trial court erred in admitting Officer Morrison's

testimony about the medications and his opinion that appellant had "something else on board," we must now conduct a harm analysis. A violation of evidentiary rules that results in the erroneous admission of evidence is non-constitutional error. *See* Tex.R.App. P. 44.2(b); *see also Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App. 1998). The appropriate harm analysis is therefore the one set out in Texas Rule of Appellate Procedure 44.2(b), which dictates that a non-constitutional error "that does not affect substantial rights must be disregarded." *Taylor v. State,* 268 S.W.3d 571, 592 (Tex.Crim.App.2008) (quoting Tex. R.App. P. 44.2(b)). A substantial right is affected when an error has a substantial and injurious effect or influence in determining a jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997). Therefore, a criminal conviction should not be overturned for non-constitutional error if the appellate court, upon examining the record as a whole, has fair assurance that the error did not influence the jury, or had but slight effect. *Cobb v. State,* 85 S.W.3d 258, 272 (Tex.Crim.App.2002).

 In assessing the likelihood that the jury's decision was adversely affected by the error, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the character of the alleged error, and how it might be considered in connection with other evidence in the case. *Motilla v. State,* 78 S.W.3d 352, 355 (Tex. Crim.App.2002). We may also consider any jury instruction given by the trial court, the State's theory and any defensive theories, closing arguments, and voir dire, if material to the claim. *Id.* at 355–56.

As explained above, Officer Morrison was not merely permitted to testify that, in his opinion, appellant was intoxicated due to the introduction of drugs or a controlled substance into his body. Such testimony would have been unremarkable and within the bounds of Morrison's training and experience. Rather, the trial court permitted Morrison to testify in great detail about appellant's prescription medications, the purposes of the medications, the side effects of the medications, how the medications affect the human body in general, and how the medications affected appellant specifically. Indeed, Morrison was allowed to testify that the medications could not have caused the "overwhelming signs" of intoxication exhibited by appellant and, in Morrison's opinion, appellant had "something else on board." A review of the record reveals that Morrison's testimony pertaining to these medications and their effects constituted a substantial part of the State's case.

During closing arguments, the State specifically argued to the jury that each member did not have to agree on "what drug it was" that caused appellant's intoxication, and it noted that some jurors could believe that appellant was intoxicated by reason of his ingestion of prescription medications while others could believe that appellant had "*something a little stronger on board,* some sort of central nervous depressant." (Emphasis added.) Although the State's argument may have been legally correct and complied with the charge given, it is significant in regard to our harm analysis because, as previously noted, neither Officer Morrison's extensive testimony about the medications at issue, nor his opinion that appellant had something else "on board," should have been admitted into evidence for the jury to consider. In his closing argument, counsel for appellant obviously concluded that the evidence pertaining to appellant's medications, Morrison's expert testimony about the medications, and their effects on appellant's intoxication, was a critical part of the State's case. Appellant's counsel de-

voted a significant portion of his closing argument to challenging the reliability of Morrison's opinions on the effects of appellant's medications and their causal relationship to appellant's intoxication. He argued that the jury should not consider Morrison to be an expert and, thus, his testimony was not reliable. In rebuttal, the State conceded that Morrison was not an expert, but the State continued to make reference not only to Morrison's testimony regarding his general opinion of intoxication but also to his testimony about the medications.

We recognize that the State presented the videotape of the sobriety tests that appellant performed at the police station. As appellant has conceded in his brief, the videotape demonstrates that he did not perform well on the tests. We also note that the State, without objection, was able to introduce into evidence the hearsay testimony of an unidentified witness who reported appellant's "crazy" driving to Officer Morrison.

However, the State was not merely required to prove that appellant had lost the normal use of his mental or physical faculties, but that he had done so "by reason of the introduction" of a "drug," a "controlled substance," a "combination of two or more" controlled substances or drugs, or "any other substance" into his body.

Here, appellant testified that he was not intoxicated, but rather, he was exhausted, dehydrated, and sleep-deprived. In contrast, Morrison testified as to his opinion that appellant was intoxicated and his intoxication was caused by the introduction of a drug into his body. Again, significantly, he was permitted to opine that appellant's medications could not have caused the "overwhelming signs" of intoxication exhibited by appellant and, therefore, appellant must have had "something else on board," a point emphasized by the State in its closing argument. Because Morrison was permitted to provide such detailed and extensive testimony regarding appellant's prescription medications and their potential effects, and because this testimony was unreliable, we cannot conclude with "fair assurance" that the trial court's error in admitting his expert testimony "did not influence the jury" or had "but a slight effect" on the jury's finding that appellant committed the offense of driving while intoxicated. *See Layton v. State*, No. 01–05–00950–CR, 2009 WL 1886162, at *3–4 (Tex. App.-Houston [1st Dist.] Jul. 2, 2009, pet. ref'd) (mem. op.). Accordingly, we hold that the trial court's error affected appellant's substantial rights. *See* Tex.R.App. P. 44.2(b).

 We sustain appellant's first issue.[4]

---

4. Our dissenting colleague opines that appellant has not preserved error because his motion (1) "operated as a motion in limine, not as a motion to suppress" and (2) "the objections made therein are not the same objections raised on appeal."

In regard to the first point, we note that the record reveals that at the pretrial hearing, the State itself treated appellant's motion as "the motion to suppress drug and medication evidence" and the trial court denied it as such. Moreover, after obtaining the trial court's ruling, appellant *did not* affirmatively waive his relied-upon objection as asserted in his motion to suppress evidence. *See Moraguez v.*

*State*, 701 S.W.2d 902, 904 (Tex.Crim.App. 1986) (stating that "[i]t is well settled that when a pre-trial motion to suppress evidence is overruled, the defendant need not subsequently object at trial to the same evidence in order to preserve error on appeal," and noting that only when "the defendant affirmatively asserts during trial he has 'no objection' to the admission of the complained of evidence" does he waive "any error in the admission of the evidence despite the pre-trial ruling").

In regard to the assertion that appellant below did not contest the "reliability" of the State's evidence, we note that at the pretrial

## Conclusion

We reverse the judgment of the trial court and remand for proceedings consistent with our opinion.

## Justice BROWN, dissenting.

hearing, appellant cited and provided the trial court with a copy of *Layton v. State,* 280 S.W.3d 235, 240 (Tex.Crim.App.2009). As argued by appellant to the trial court, "The conclusion in [*Layton* ] is that if you are going to provide medication evidence or evidence that there is some intoxication caused by medication, that is scientific evidence; and we have got to have an expert who can testify as to how the medication is ingested in the body, how it metabolizes in the system in terms of when you took it and what the affects are and they psychopharmacological affects are, without that sort of testimony, you cannot admit that evidence because it is not relevant; and it is not more probative than prejudicial." The record further reveals that the State understood appellant's argument and tried to distinguish *Layton.* The defendant in *Layton* made a point similar to that asserted by appellant in the instant case. As noted by the Texas Court of Criminal Appeals:

Appellant's contention on appeal is not that the evidence of his prescription-drug use is irrelevant per se, but that the relevance is conditional upon proof that it is sound and verifiable. *Appellant argues that without that showing, the evidence is not reliable, and, therefore, irrelevant.* When the relevance of evidence depends upon the fulfillment of a condition of fact, the court may admit the evidence contingent upon the introduction of evidence sufficient to support a finding of the fulfillment of the condition. Tex.R. Evid. 104(b). Reliability of scientific evidence demands a certain technical showing and depends on whether the evidence has a basis in sound scientific methodology. *Jordan v. State,* 928 S.W.2d 550, 555 (Tex. Crim.App.1996).

*Id.* at 241 (emphasis added).

Here, after receiving a copy of *Layton,* the trial court should have been aware of appellant's grounds for the exclusion of Officer Morrison's testimony. Again, as explained by the court of criminal appeals:

## HARVEY BROWN, Justice, dissenting.

Appellant contends that "the trial court erred in admitting unreliable and irrelevant scientific evidence" that he was intoxicated due to his use of two pharmaceutical medications. I agree with the Court that certain portions of Officer Morrison's testimony regarding the details of the two prescription drugs in question would have

After receiving a copy of *DeLarue* and hearing Appellant's argument, *the trial judge should have been aware of the basis of the objection. It is apparent that Appellant's objection was that evidence of his use of Xanax and Valium was inadmissible without the State proving the accuracy and reliability of the evidence and its relevance to whether Appellant was intoxicated by the introduction of alcohol.* Appellant noted that *without extrapolation on the Xanax and Valium to determine their effect on the body, the State had not shown their relevance to the issue in question.* Although the parties did not specifically address the officer's subsequent statements regarding the medications, such statements fall under Appellant's objection to the relevance of his use of these medications.

*Id.* at 240 (emphasis added).

Accordingly, we conclude that appellant has preserved his issue for our review. *See id.* As previously explained in *Layton,*

[A]ll the party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it. Beyond this, there are no specific words or technical considerations required for an objection to ensure that the issue will be preserved for appeal. *If the correct ground of exclusion was apparent to the judge and opposing counsel, no waiver results from a general or imprecise objection.* For example, we said that the one-word objection, "hearsay," was sufficient to put the trial judge and opposing counsel on notice of the reason for the objection. In addition, we have previously stated that we will not be hyper-technical in examination of whether error was preserved.

*Id.* at 239 (emphasis added) (citations omitted).

been inadmissible based on lack of qualifications and reliability if appellant had timely and properly objected to that testimony. Because appellant did not preserve either of these objections, however, I respectfully dissent. At best, appellant preserved error on relevance grounds, but Officer Morrison's objected-to testimony was relevant and any error in its admission was harmless. The testimony to which appellant objected was also cumulative of other testimony for which no objection was made. I would therefore affirm the trial court's judgment.

## I. Appellant did not preserve his objections to Officer Morrison's qualifications or the reliability of his testimony before or during trial.

### A. "Motion in Limine to Suppress Drug/Medication Evidence"

Appellant's pretrial motion, which he titled "motion in limine to suppress drug/medication evidence," did not preserve his objections to either Officer Morrison's qualifications or the reliability of Officer Morrison's testimony that appellant was intoxicated due to medication for two reasons: (1) it operated as a motion in limine, not a motion to suppress, and (2) the objections made in it are not the same as the objections raised on appeal.

Whether a motion operates as a motion to suppress or a motion in limine is a decisive issue because an adverse ruling on a motion to suppress preserves error for our review and an adverse ruling on a motion in limine preserves nothing.[1] *See Gonzales v. State*, 685 S.W.2d 47, 50 (Tex. Crim.App.1985); *Roberts v. State*, 545 S.W.2d 157, 158 (Tex.Crim.App.1977). "A motion to suppress is a specialized objec-

tion regarding the admissibility of evidence." *Wade v. State*, 814 S.W.2d 763, 764 (Tex.App.-Waco 1991, no writ). In contrast, "a ruling on a motion in limine does not purport to be one on the merits but one regarding the administration of the trial." *Norfleet v. State*, Nos. 01–10–00429–CR and 01–10–00430–CR, 2011 WL 2436494, at *3 (Tex.App.-Houston [1st Dist.] June 16, 2011, no pet.) (mem. op., not designated for publication). The fundamental purpose of a motion in limine is to obtain an order requiring an initial offer of objectionable evidence outside the jury's presence. *See Thierry v. State*, 288 S.W.3d 80, 86 (Tex.App.-Houston [1st Dist.] 2009, pet. ref'd) (explaining that "[a] motion in limine is 'a method of raising objection to an area of inquiry prior to the matter reaching the ears of the jury through a posed question, jury argument, or other means'" and is "'by its nature, subject to reconsideration by the court throughout the course of the trial'") (quoting *Norman v. State*, 523 S.W.2d 669, 671 (Tex.Crim.App.1975)).

Appellant's ambiguously-titled pretrial motion is most akin to a motion in limine. It embraces the fundamental purpose of a motion in limine by requesting that the trial court "instruct all counsel for the State not to mention, refer to, allude to, or present audio or visual evidence pertaining directly or indirectly to [appellant's] use of any drug or medication." Nowhere in the motion does appellant expressly request that the trial court exclude evidence; his prayer for relief requests only that the trial court "grant this motion and instruct all counsel for the State as moved for above." That the motion was argued immediately after another motion in limine

---

1. "For error to be preserved with regard to the subject of a motion in limine, an objection must be made at the time the subject is raised during trial." *Fuller v. State*, 253 S.W.3d 220, 232 (Tex.Crim.App.2008); *Webb v. State*, 760 S.W.2d 263, 275 (Tex.Crim.App.1988).

further confirms its character.[2] The Court correctly observes that, during the pretrial conference, the State identified the motion as a "motion to suppress drug and medication evidence." *See Delane v. State,* 369 S.W.3d 412, 424 (Tex.App.-Houston [1st Dist.] 2012, no pet. h.). Beyond that single reference, which was made by the State and not appellant, there was no argument or statement making clear that the relief sought by appellant was exclusionary rather than limine in nature. I would conclude that it was appellant's burden, as the party charged with preserving error, to make clear the relief requested. Because I believe appellant's pretrial motion operated as a motion in limine, and not as a motion to suppress, I would conclude appellant has not preserved error for our review.

More importantly, appellant's objection to this evidence in this appeal is different than his trial objection. In the trial court, appellant objected that expert testimony on the impact of the prescription medications was necessary and, without it, the evidence regarding the prescription medications was not relevant. Appellant's written motion argued that expert testimony was necessary to provide a "proper foundation" for the evidence of his use of prescription medications.[3] Citing *Layton*

v. *State,* 280 S.W.3d 235, 240 (Tex.Crim. App.2009), he further argued that evidence of his use of prescription medications was "not relevant" in the absence of expert testimony. During the hearing, appellant contended that, before evidence of his use of prescription medication could be admitted, the State was required to present scientific evidence of "how [the] medication is administered, how long it has to be administered or taken, how long it last[s] in the system, and how quickly it is metabolized," as well as whether these medications "could contribute to his intoxication." Thus, instead of contesting reliability, appellant argued that evidence of his use of prescription medications was not relevant and was unfairly prejudicial in the absence of scientific evidence.[4] Because these were appellant's only specific pretrial objections, he did not preserve a qualifications or reliability challenge before trial.

The Court concludes that appellant preserved error by discussing and providing the trial court with a copy of *Layton.* I do not agree that the parties' oral arguments "should have" made the trial court aware of appellant's contention that the use of medications was inadmissible because Officer Morrison was unqualified and his testi-

2. Before trial, appellant also filed a "Motion in Limine to Suppress HGN Evidence." The motion does not request the suppression of the evidence; rather, it requests that defense counsel be permitted to conduct a voir dire examination of any witness outside the presence of the jury before the witness testified regarding Horizontal Gaze Nystagmus (HGN) test results. Despite the ambiguity created by the use of the word "suppress" in the title of the motion, the requested relief makes clear that this was also a motion in limine.

3. An objection that expert evidence is necessary to prove an element of a crime or a cause of action is different than an objection that the presented evidence is unreliable or is offered by an unqualified witness. *See Shaw v.*

*State,* 329 S.W.3d 645, 655 (Tex.App.-Houston [14th Dist.] 2010, pet. ref'd) (explaining specificity required in making objection to expert testimony); *see also FFE Transp. Servs., Inc. v. Fulgham,* 154 S.W.3d 84, 91 (Tex.2004) (expert testimony required because "the layman does not know what the standard of care is for inspection and maintenance of the upper coupler assembly, kingpin, and base rail of a refrigerated trailer."); *Offshore Pipelines, Inc. v. Schooley,* 984 S.W.2d 654, 665 (Tex. App.-Houston [1st Dist.] 1998, no pet.) (expert testimony needed when subject matter requires "scientific interpretation").

4. On appeal, Appellant does not rely on Texas Rule of Evidence 403.

mony was unreliable. Appellant's contention here is that the trial court erred in admitting "unreliable and irrelevant scientific evidence." In the motion itself, however, appellant contended that evidence of his use of medications was "irrelevant" and also inadmissible under Rule 403. Appellant's motion makes no mention that Officer Morrison was not qualified or that his testimony was unreliable. During the trial court's pretrial hearing, appellant orally contended "that the State was required to present expert testimony about his alleged ingestion of medications and the effects of the medications on him" and that absent such expert testimony his use of medications was "not relevant" and was "not more probative than prejudicial." Appellant's oral arguments during the pretrial hearing likewise made no reference to a problem with Officer Morrison's qualifications or the reliability of his testimony. Because there was no objection to the qualifications of Officer Morrison, I disagree that this objection was preserved and therefore believe the Court errs in relying upon his lack of qualifications to reverse the trial court's judgment.[5]

I also disagree that a reliability challenge was preserved under the holding in *Layton.* There, in contrast to this case, the appellant's arguments were the same in the trial court and in the appellate courts. *Layton,* 280 S.W.3d at 240. He argued in the trial court that his use of medications was inadmissible without proof of "the accuracy and reliability of the evidence and its relevance" and on appeal argued that the medical evidence was "not reliable, and, therefore, irrelevant." *Id.* at 240–41.[6] Although unreliable evidence or scientific evidence without a proper foundation may be irrelevant, the converse is not true. Irrelevant evidence is not necessarily unreliable.[7] Thus, when the objecting party contends that evidence is irrelevant *because* it is unreliable, a reliability objection is necessary to alert the trial court that the three criteria for measuring reliability and the *Kelly* factors must now be considered by the court. *See Layton,* 280 S.W.3d at 241 (discussing *Kelly's* three criteria and five factors for determining

---

5. While I agree with the Court that Officer Morrison was not qualified to provide some of his detailed testimony regarding the prescription medications and their effects—particularly his testimony that appellant was under the influence of an unnamed pain medication and that the two identified medications had passed through his system by the time his performance of the sobriety tests was videotaped at the police station—appellant's objection was based on Rule 403 and relevance. These two objections do not preserve a qualifications objection.

6. The issue in *Layton* was the admissibility of the defendant's use of medications without any evidence from which to extrapolate that his use of medications hours before the incident would still have altered his behavior at the time of his arrest. When the court asked whether the defendant had any scientific evidence to demonstrate the medications "impact on the body" and "life expectancy" in the body, the defendant responded that the

state bore that burden of proof "under *Kelly,*" which is the seminal case in which the Court of Criminal Appeals foreshadowed *Daubert* and adopted the reliability inquiry. *Kelly v. State,* 824 S.W.2d 568, 572 (Tex.Crim.App. 1992). Thus, the defendant's objection in *Layton* invoked the reliability inquiry. The appellant's objection did not.

7. *See Jordan v. State,* 928 S.W.2d 550, 555 (Tex.Crim.App.1996) ("The focus of the courts in *Kelly, Daubert* and *Robinson* was on assessing the scientific reliability of the evidence at issue, rather than its relevance.... Relevance is by nature a looser notion than reliability. Whether evidence 'will assist the trier of fact' and is sufficiently tied to the facts of the case is a simpler, more straightforward matter to establish than whether the evidence is sufficiently grounded in science to be reliable."). *See also Shaw v. State,* 329 S.W.3d 645, 654 (Tex.App.-Houston [14th Dist.] 2010, pet. ref'd).

reliability). Appellant's written and oral objections never notified the trial court that reliability, and its attendant criteria and factors, were at issue. Merely handing the trial court a copy of a case that addresses multiple issues (relevance and reliability) does not preserve error for an issue on appeal.[8]

### B. Trial objection

Likewise, appellant's trial objection did not preserve error for our review. We require a party to "let the trial judge know what he wants, why he thinks himself entitled to it, and . . . do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex.Crim.App. 1992). When the State asked Officer Morrison if he would "expect to see someone on Lisinopril exhibit the horizontal gaze nystagmus (HGN) clues demonstrated by appellant, appellant made a single, vague objection: "scientific testimony." Assuming this trial objection was sufficiently specific to notify the trial court of the existence of a *Daubert–Kelly* issue, it was not sufficient to identify the specific deficiency with respect to reliability or qualifications. *See Scherl v. State*, 7 S.W.3d 650, 652 (Tex.App.-Texarkana 1999, pet. ref'd) (objection that expert testimony was inadmissible "under Rule 702, *Daubert, Kelly*, and *Hartman* " was effective as general objection to improper predicate, but was insufficient to inform trial court of specific complaint on which it should rule); *Chisum v. State*, 988 S.W.2d 244, 250–51 (Tex.App.-Texarkana 1998, pet. ref'd) (objection to expert opinions without specifying particular deficiency in qualifications or reliability waived error); *see also Elmore v. State*, No. 07–04–0587–CR, 2005 WL 2347401, at

*2 (Tex.App.-Amarillo Sept. 26, 2005, pet. ref'd) (mem. op., not designated for publication) (objection to "no reliable foundation" was too general to advise trial court of any specific deficiency in testimony and did not preserve error).

Even interpreting the trial objection as being made in the context of appellant's pretrial relevance objection, the objection still would not preserve error with respect to the qualification or reliability of Officer Morrison's testimony. *See Shaw*, 329 S.W.3d at 654 (noting that three requirements of expert testimony—(1) qualification, (2) reliability, and (3) relevance—raise distinct questions and issues and that objection based on one requirement does not preserve error as to another).

Equally important is the fact that appellant did not assert a "scientific testimony" objection to Officer Morrison's testimony about information from the nursing handbook, the effects of Lisinopril on his wife, the labels on the medication bottles, and the notes in his arrest report regarding the medications. Appellant himself testified that he had taken at least one of the medications, conceded that the labels on the medications warned against the operation of heavy machinery, and agreed that his medications sometimes made him dizzy. Appellant twice stated on video that his medications were affecting him, and at the conclusion of the videotape, when asked if he understood his rights, appellant stated that the medications were making him drowsy.

In sum, the record indicates that appellant waived his appellate challenge to the "scientific testimony" on the effects of Lisinopril on the HGN test results. *See Lane v. State*, 151 S.W.3d 188, 193 (Tex.

---

**8.** The Court is correct that *Layton* addresses the reliability of expert testimony on the effects of prescription medications and the relevance of prescription medications. But appellant did not raise a reliability objection to the trial court.

Crim.App.2004) (stating that "to preserve error in admitting evidence, a party must ... object each time the inadmissible evidence is offered or obtain a running objection" and that "[a]n error in the admission of evidence is cured where the same evidence comes in elsewhere without objection") (quoting *Valle v. State,* 109 S.W.3d 500, 509 (Tex.Crim.App.2003)).

Additionally, appellant's own testimony, and his videotaped statements regarding the prescription warning labels and the medication's effect on him, rendered Officer Morrison's testimony cumulative. *See Brooks v. State,* 990 S.W.2d 278, 287 (Tex. Crim.App.1999) (providing that admission of inadmissible evidence becomes harmless error if other evidence proving same fact is admitted elsewhere without objection); *Smith v. State,* 236 S.W.3d 282, 300 (Tex. App.-Houston [1st Dist.] 2007, pet. ref'd) (stating that "improper admission of evidence is harmless if the same or similar evidence is admitted without objection at another point in the trial"). Consequently, I would conclude that any error with respect to the admission of the challenged evidence was either not preserved or was harmless and did not affect appellant's substantial rights. *See* Tex.R.App. P. 44.2.

## II. *Layton* does not establish the trial court's error.

*Layton* does not compel a holding that the evidence that appellant objected to before or during the trial—i.e., that appellant used prescription medications and Lisinopril does not cause a person to fail an HGN test—was irrelevant and inadmissible. The *Layton* court determined that evidence of the use of two prescription medications by a driver was irrelevant in a case in which the driver was charged with intoxication by alcohol, not prescription medication combined with alcohol. But here, there was no reference to alcohol in either the evidence or the jury charge. Intoxication was defined only by reference to the introduction of a controlled substance or drug. On this record, the use of prescription medication certainly was relevant to the question presented to the jury in the charge.

## III. Any error in the admission of evidence was harmless.

The elements of a DWI "are: (a) a person (b) is intoxicated (c) while operating (d) a motor vehicle (e) in a public place." *Gray v. State,* 152 S.W.3d 125, 131 (Tex.Crim.App.2004); Tex. Penal Code Ann. § 49.04(a) (West 2011). "Intoxicated" may be defined in subjective or objective terms. *See* Tex. Penal Code Ann. § 49.01(2)(A), (B) (West 2011). Only the subjective definition of "intoxicated" is implicated in this case, so appellant was "intoxicated" if he did not have "the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." Tex. Penal Code Ann. § 49.01(2)(A); *see also Atkins v. State,* 990 S.W.2d 763, 765 (Tex.App.-Austin 1999, pet. ref'd) (explaining the "subjective" and "objective" definitions of intoxication). The type of intoxicant that caused the loss of the normal use of a person's faculties is not an element of the offense. *Gray,* 152 S.W.3d at 132. The term "intoxicated" therefore has two components: (1) impairment (2) caused by alcohol or drugs.

The State proved the first component, impairment. A woman informed Officer Morrison that appellant was driving a car "crazy," had almost hit her car, and had run a number of other cars off the road. Officer Morrison testified that he followed appellant and observed his dangerous driving. He also observed appellant driving

only 10 mph in a 30 mph speed zone even though other traffic was driving near the posted speed limit. Officer Morrison witnessed appellant drive through a stop sign and red blinking traffic light without stopping and nearly hit a vehicle. Officer Morrison testified that when he flashed his patrol car lights, appellant ran over the curb and almost into a fence. Appellant then had difficulty standing, fumbled for his identification, and "slurred" his speech. Appellant's responses to Officer Morrison's questions were "very, very slow and diminished." Appellant had to lean against the vehicle while Officer Morrison performed the field-sobriety tests, which appellant failed at the scene and then again in part at the police station.

Appellant's testimony raised issues about his credibility. In addition to disputing Officer Morrison's account of the accident,[9] he denied that Officer Morrison pulled him over. Instead, he claimed that he flagged down Officer Morrison for assistance. He accused Officer Morrison of lying about the debris on the road and the need to drive around the debris. Appellant also stated that Officer Morrison lied about appellant's failure to stop at the stop sign and at red blinking traffic light. Appellant admitted that he previously had been convicted of possession of a controlled substance and that he had used cocaine many years earlier, but he denied that he was using cocaine for many years before that arrest. He also claimed not to remember whether his conviction was for possession of cocaine or some other drug. Although he pleaded guilty to assault of a family member, he denied committing the assault.

Appellant offered two excuses for his conduct: (1) he was dehydrated and (2) he had been awake for three days and had

not eaten because of Hurricane Ike. Setting aside the line of testimony to which appellant objected (i.e., Officer Morrison's testimony on the side-effects of Lisinopril on the HGN test), we should consider the other evidence that appellant's impairment was due to use of prescription medications and not either of these two potential causes. I would conclude that the other evidence was so overwhelming that, even if appellant's relevance objection extended to reliability issues, any error was harmless.

First, it is undisputed that appellant had two prescription medications, Lisinopril and Pyridoxine, in his car and had taken them recently before driving erratically and dangerously. Appellant told Officer Morrison at the scene that he was taking "non-narcotic" medicine for his heart and high blood pressure. Appellant stated that he took his blood pressure pill "right before" he drove his car.

Second, appellant made four other admissions: (1) at the scene to Officer Morrison that he was not supposed to drive while on medication; (2) on cross-examination that after taking his medications he noticed that he "was lightheaded" and "dizzy" as he began driving from his house; (3) on videotape that he was "under the influence of my medication. It is making me drowsy"; and (4) during cross-examination that his medications sometimes made him dizzy and that sometimes the dizziness "comes out of nowhere."

Third, Officer Morrison opined that appellant was intoxicated due to the introduction of drugs or a controlled substance into his body. Officer Morrison believed that appellant was intoxicated by use of "drugs based on the lack of odor of any alcoholic beverage." Officer Morrison testified that he had received a complaint

---

9. He testified that he had lost control of his vehicle as he reached for his cell phone on the car floorboard. He also denied Officer Morrison's testimony that he went over the curb.

from a citizen regarding appellant's dangerous driving, followed appellant and observed his reckless driving, conducted or attempted to conduct various field-sobriety tests at the scene and at the police station, and observed appellant's physical and mental faculties during the course of his interaction with appellant. Officer Morrison, therefore, could testify based on his experience and observations that appellant was intoxicated as a result of the presence of the medications in his system. *See Waller v. State,* No. 05–09–00097–CV, 2009 WL 4642850, at *3 (Tex.App.-Dallas Dec. 9, 2009, no pet.) (mem. op., not designated for publication). As the Court recognizes, such testimony is "unremarkable and within the bounds of Morrison's training and experience." *Delane,* 369 S.W.3d at 423. Officer Morrison's testimony on the medical side-effects of each particular medication was simply unnecessary detail that did not subtract from his other testimony.

Fourth, Officer Morrison's observations also supported his opinion that appellant was intoxicated due to the use of medications. Officer Morrison testified that appellant's pupils were dilated. He had difficulty following instructions and explaining himself. During the HGN test, which Officer Morrison testified is designed to test for a central nervous system depressant, appellant exhibited the "maximum number of clues" to indicate "intoxication." According to Officer Morrison, these results demonstrated that appellant "was under the influence of a central nervous system depressant." Appellant also failed a "vertical nystagmus" test, which Officer Morrison testified indicated "a very high level of intoxicants" in his system. Finally, Officer Morrison performed a "convergence test," and appellant was "positive for that clue as well." Officer Morrison then helped appellant to his patrol car because appellant was not able to walk without support. These signs are evidence of intoxication.

*See Cotton v. State,* 686 S.W.2d 140, 143 n. 3 (Tex.Crim.App.1985); *Paschall v. State,* 285 S.W.3d 166, 177 (Tex.App.-Fort Worth 2009, pet. ref'd); *Compton v. State,* 120 S.W.3d 375, 380 (Tex.App.-Texarkana 2003, pet. ref'd). Officer Morrison was qualified to provide this testimony, and appellant did not object to it.

Fifth, documentary evidence supported Officer Morrison's conclusion. Officer Morrison was "familiar" with Lisinopril because he had a "nursing drug handbook." Officer Morrison reviewed the handbook, which explained that this medication "causes drowsiness and ataxia." Officer Morrison described ataxia as "the inability to walk .... very well." The Lisinopril prescription bottle contained a warning label stating, "Do not drive or operate heavy machinery." In regard to the Pyridoxine prescription, Officer Morrison also reviewed the nursing directory handbook, and he explained that it also caused ataxia. Officer Morrison referred to his notes in his arrest report, in which he had written that Pyridoxine caused ataxia and malaise, which Officer Morrison described as being "real laid back" and "feeling kind of lethargic." The nursing handbook also stated, in regard to both prescriptions, that users should "avoid alcoholic beverages or any other depressant." Officer Morrison noted that the Pyridoxine bottle also contained a warning label stating, "Warning, do not drive or operate heavy machinery while taking this medication."

Sixth, appellant declined to provide a breath sample, which itself supports an inference of intoxication. *See* TEX. TRANSP. CODE ANN. § 724.061 (West 1999) ("A person's refusal of a request by an officer to submit to the taking of a specimen of breath or blood, whether the refusal was express or the result of an intentional failure to give the specimen, may be introduced into evidence at the person's trial.");

*see also Finley v. State,* 809 S.W.2d 909, 913 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd).

Finally, the State was not required to identify the particular drug that caused appellant's impairment. *Gray,* 152 S.W.3d at 132. Officer Morrison ruled out impairment due to alcohol. Officer Morrison's testimony about appellant's performance on the sobriety tests, the significance of the test results, and Officer Morrison's other observations, when combined with appellant's admissions, were more than sufficient to rule out the two causes of impairment claimed by appellant and demonstrate intoxication due to medications generally.

### Conclusion

Respectfully, I would affirm the judgment of the trial court.

Justice BROWN, dissenting.