Elija T. SMITH, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–93–00211–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

March 17, 1994.

Robert A. Morrow, Hocker & Morrow, Houston, for appellant.

John B. Holmes, Jr., Alan Curry, Larry McDougal, Houston, for appellee.

Before O'CONNOR, DUGGAN and HEDGES, JJ.

**OPINION**

DUGGAN, Justice.

The jury found appellant, Elija T. Smith, guilty of possession of less than 28 grams of cocaine. The trial court found two enhancement paragraphs true and assessed punishment at 30–years confinement. In his sole point of error, appellant argues that the evidence was insufficient to prove possession of cocaine. We affirm.

On May 9, 1992, Charles E. Thompson, Sr. was asleep on the couch in his daughter's house when someone entered, took his car keys from a coffee table, and stole his car.

On more than one occasion, Thompson's son-in-law, Gilbert Rodriguez, who also lived in the house, had stolen his vehicle. When he awoke, Thompson reported his car stolen.

At approximately 4:30 a.m., on May 10, 1992, Officer N.E. Malloy of the Harris County Sheriff's Department, saw a vehicle weaving in and out of the lane on a street in northwest Houston. He had the vehicle pull over; Rodriguez was the driver and appellant was the passenger. Because he determined that an arrest warrant had been issued for driving while his driver's license was suspended, Malloy placed Rodriguez under arrest. When Rodriguez got out of the vehicle, Malloy saw a "chrome-looking tube, the kind they use for smoking crack cocaine," on the floorboard of the driver's side.

Malloy placed Rodriguez in the patrol car, and removed the pipe (Pipe One) from the floorboard. He then asked appellant to get out of the vehicle so that he could search it. Malloy found two more pipes (Pipes Two and Three), one made of metal, the other of glass; one was located on the floorboard of the passenger's side, the other on the passenger's side of the front seat. Malloy then arrested appellant. Malloy saw a substance in the glass pipe. Although it was not recorded in his police report, Malloy testified that he believed both Rodriguez and appellant were intoxicated on crack cocaine because they appeared fidgety and wide-eyed, and had accelerated pulse rates.

A field test of the substance in the two pipes located near appellant indicated a positive test for cocaine. A subsequent chemical analysis of the combined substance taken from three pipes revealed 7.06 milligrams of pure cocaine.

■ In reviewing the sufficiency of the evidence, an appellate court must view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This Court may not sit as a thirteenth juror and disregard or reweigh the evidence. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). If there is evidence that establishes guilt beyond a reasonable doubt, and the trier of fact believes that evidence, we are not in a position to reverse the judgment on sufficiency of evidence grounds. *Id.; Glass v. State,* 761 S.W.2d 806, 807 (Tex.App.— Houston [1st Dist.] 1988, no pet.). The jury, as trier of fact, is the sole judge of the credibility of witnesses, *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988), and may believe or disbelieve all or any part of a witness' testimony. *Id.* at 614; *Smith v. State,* 789 S.W.2d 419, 420 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd). A jury may believe a witness even though his testimony is contradicted. *Sharp,* 707 S.W.2d at 614.

Appellant contends that we can give no weight to Malloy's testimony to prove that the substance possessed by appellant was cocaine. Over the objection of appellant's trial counsel, Malloy testified that the field test of Pipes Two and Three revealed the presence of cocaine. Appellant cites *Curtis v. State,* 548 S.W.2d 57, 59 (Tex.Crim.App. 1977), for the proposition that although an experienced narcotics officer may identify marihuana, he may not testify that a powdered substance is heroin. The State agrees that no probative value should be given to this testimony as an expert, but argues that we should give value to his testimony as a nonexpert witness because he was testifying about his actual observations of the test results.

■ We believe that Malloy's testimony about the performance and results of a field test is expert testimony. As such, in accordance with *Curtis,* he could not testify that the substance was cocaine. However, he could testify about the procedure he used in performing the field test, and about the physical results of the test. He stated:

> The swabs are removed from the package, and they're—you run alcohol over them, make sure that there is no foreign substance on them—the cotton. And then, you place the swab in the crack pipe, or whatever you're testing. And if it turns blue, there's presence of cocaine, which is what happened here.

Thus, although we give no probative value to Malloy's **conclusion** that because the cotton turned blue, cocaine was present, we do assign value to the remainder of his testimony.

Further, unlike *Curtis,* the State had an expert chemist testify. "If this testimony (the field officer's) was error, it was rendered harmless when a qualified and expert chemist later testified that the substance was cocaine." *Hicks v. State,* 545 S.W.2d 805, 810 (Tex.Crim.App.1977). In support of his opinion that the combined substance from the three pipes was cocaine, the chemist spoke of the significance of the field test and the reliability of the field test results:

Q: How reliable is that test?

A: Well, it's a presumptive test.

Q: What do you mean?

A: There can be false—there can be false positives, meaning that a substance other than cocaine can produce the color, in this case being blue; and the substance could turn out to be not cocaine, in many instances.

Q: What substances will cause that result?

A: Well, laundry detergent; baking soda; some other drugs that are not controlled substances could also cause the blue color to be produced.

    . . . .

Q: Now, the officers used the C–Pak Kit to make the determination in the field, correct?

A: That's my belief, yes.

Q: Of the metal pipes you received, have you ever seen any false readings?

A: No. Not on metal pipes.

Q: And glass pipes?

A: Maybe one or two out of many thousands . . . .

Q: And it's your testimony, that crack cocaine was positive in this?

A: In—yes. I found crack cocaine.

The chemist further testified that he performed two more tests, an ultraviolet spectrophotometry and an infrared spectrophotometry, both of which verified the presence of cocaine from all three tubes.

Appellant argues that because the chemist analyzed a combined substance from Pipes One, Two, and Three, the evidence only presents a plausible explanation of appellant's guilt. We disagree. The record supports conflicting inferences. Malloy testified that he recovered Pipes Two and Three from the passenger's side of the vehicle, and that upon field testing the pipes, the cotton swabs turned blue. The chemist testified that blue may indicate the presence of cocaine, and that he had never seen a false reading from a field test on a metal pipe. Together, the chemist's and Malloy's testimony combine to support a reasonable inference that at least some of the 7.06 milligrams of cocaine found in the three pipes came from at least one of the two pipes recovered from appellant's side of the vehicle. In cross-examination of both Malloy and the chemist, appellant's trial counsel raised a conflicting inference that all the cocaine could have come from Pipe One, rather than from Pipes Two or Three.

■ When we review a record which supports conflicting inferences, we must "presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim.App.1991) (citing *Farris v. State,* 819 S.W.2d 490, 495 (Tex.Crim.App.1990)). Accordingly, we find the evidence sufficient to support the jury finding that appellant intentionally and knowingly possessed cocaine.

We overrule appellant's point of error, and affirm the trial court's judgment.

Justice O'CONNOR dissenting.

O'CONNOR, Justice, dissenting.

I dissent. The majority's opinion affirms a conviction against Elija T. Smith, the appellant, for possession of cocaine based only on the results of a field test and an invalid laboratory test. No other evidence supports the jury's finding that the appellant possessed cocaine.

As stated in the majority's opinion, a car driven by Gilbert Rodriguez was stopped by Officer N.E. Malloy for a traffic violation.

After Rodriguez got out of the car, Malloy saw a "chrome-looking tube, the kind they use for smoking crack cocaine," on the floorboard of the driver's side (pipe one). Malloy then searched the car. He found two more pipes, one of metal (pipe two) and one of glass (pipe three), on the passenger's side of the car, where the appellant had been sitting.

Malloy conducted a field test on the two pipes he found near the appellant (pipes two and three), and both tested positive for cocaine. Malloy testified he saw a substance in the glass pipe. Sometime before trial, a chemist washed all three pipes with sulfuric acid, combined the wash, and conducted a spectrograph analysis on the substance. The result of the test of the combined substance from the three pipes revealed 7.06 milligrams of pure cocaine.

The appellant contends we can give no weight to Malloy's testimony to prove that the substance possessed by the appellant was cocaine. I agree. Malloy's testimony regarding the result of his field test of the three pipes is not evidence the appellant possessed cocaine. *Curtis v. State*, 548 S.W.2d 57, 59 (Tex.Crim.App.1977) (an experienced narcotics officer, who conducted a field test, may not testify a powder is heroin). Even the State agrees that Malloy's testimony has no probative value as expert testimony. The State, however, argues we can consider Malloy's testimony as a nonexpert witness because he was testifying about his actual observations of the test results.

The majority states it gives no probative value to Malloy's **conclusion** that the cotton turned blue in his field test because of cocaine, but it assigns value to the rest of his testimony. Then, the majority bootstraps Malloy's testimony by permitting the expert to testify that the results of the field test conducted by Malloy was probably an indication of cocaine.

The majority relies on *Hicks v. State*, 545 S.W.2d 805, 809–10 (Tex.Crim.App.1977) for the statement "If this testimony (the field officer's) was error, it was rendered harmless when a qualified and expert chemist later testified that the substance was cocaine." *Hicks* did not involve the mixing of the results of three containers, as this case does. In *Hicks*, an expert testified unequivocally that the substance found on the defendant was cocaine. Here, that is the very issue challenged by the appellant in this appeal.[1]

The majority holds Malloy's testimony supports an inference that cocaine was present in one of the pipes found close to the appellant. I disagree. Malloy's testimony supports no inference because the evidence that cocaine was present in pipes two and three is not based on proper expert testimony.

The majority's analysis has at least three problems: (1) The combination of the wash from the three pipes invalidated the test; (2) the field test was not sufficient evidence that the appellant possessed cocaine; and (3) the expert was equivocal about the accuracy of the field test.

### The combination invalidated the test

Before conducting the test in the laboratory, the expert combined the results from three pipes, one of which the appellant was not charged with possessing. There is no testimony that indicates how much of the cocaine was from pipe one, located near the driver, and how much was from pipes two and three, the ones located on the passenger's side of the vehicle. For all we know, all of the substance could have come from pipe one, which was found on the driver's side; alternatively, most could have come from pipe one, and only a legally insufficient amount could have come from pipes two and three. *See Coleman v. State*, 545 S.W.2d 831, 835 (Tex.Crim.App.1977) (5.06 milligrams was not sufficient to support a conviction). Under either scenario, the appellant's conviction cannot be affirmed on the expert's

1. Even if *Hicks* applied, the majority's statement does not withstand scrutiny. The Court of Criminal Appeals held in *Cole v. State*, 839 S.W.2d 798, 808 (Tex.Crim.App.1990), that a chemist cannot testify at trial about the test results conducted on a substance from another chemist's report. The Court noted that some of the analyses were "remarkably subjective in nature as well as remarkably imprecise and subject to individual interpretation." A field test conducted by an officer on the scene is even "more subjective" and less precise than any test conducted by a chemist in a laboratory.

testimony after the State combined the substances from pipes one, two, and three.

### The field test was insufficient

The majority seems to say that whenever an officer conducts a field test that results in the positive identification of drugs, all the State is required to do is bring an expert to testify that field tests are generally accurate. I disagree. Nothing in our jurisprudence permits us to conclude the State can skip the laboratory test and rely on a field test. A field test is not sufficient evidence of the presence of a controlled substance on which to base a conviction, *Curtis,* 548 S.W.2d at 59; and a field test cannot be elevated to "scientific" evidence by the testimony of an expert.

When an expert conducts a test in the laboratory, the expert conducts it under circumstances that reduce the possibility of error. A jury can rely on expert testimony because it has the assurance that the results are conducted under scientific controls. Nothing in our jurisprudence permits us to elevate the testimony of a non-expert witness to the level of "scientific testimony."

### The expert was equivocal

The expert testified that the field test is only presumptive, that it can result in a false-positive. He explained that a false-positive result of the field test occurs when a substance that is not an illegal drug produces the color blue. He gave examples of drugs that cause a false positive: laundry detergent, baking soda, and legal drugs. He said he had never seen a false reading (he did not say a "false-positive") from a metal pipe, but he had seen some from glass pipes.

On this record, the combined testimony of the officer and the expert about the field test is not enough for a jury to conclude that the appellant possessed cocaine. Only an expert can testify whether a substance is cocaine.

I would sustain the appellant's point of error, and reverse.