**Dissenting opinion issued August 29, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

### NO. 01-11-00715-CV

————————————

### IN THE MATTER OF Z.R., A CHILD

---

**On Appeal from the County Court at Law No. 2**
**Fort Bend County, Texas**
**Trial Court Case No. 10-CJV-015951**

---

## DISSENTING OPINION

Because the student in possession of whatever the green substance in his bookbag's pencil case was maintained it to be a then-legal synthetic form of pot, the efficacy of the in-court 'test' conducted by a (presumably) uniformed peace officer before the jury, and the testimony of that officer and

other peace officers as to the results and meaning of the tests before the jury were accorded a heightened import. The majority concludes that any error in admitting Officers Dale's and Phillips's testimony regarding the significance of presumptive test results and permitting Officer Phillips's in-court demonstration of a presumptive test was harmless and does not warrant reversal. Because I believe the trial court clearly erred in both respects, and that such errors were harmful, I respectfully dissent.

### In-Court Presumptive Test

Rule 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702. The Court of Criminal Appeals has held that "[p]ursuant to Rule 702, it is the responsibility of the trial court to determine whether the scientific evidence offered is sufficiently reliable, as well as relevant, to help the jury in reaching accurate results." *Layton v. State*, 280 S.W.3d 235, 241 (Tex. Crim. App. 2009). "Reliability of scientific evidence requires a certain technical showing and depends on whether the evidence has a basis in sound scientific methodology." *Id.* To that end, "[t]he proponent of scientific evidence bears the burden of proving to the trial court, by clear and convincing evidence, that the

evidence is sufficiently relevant and reliable to assist the jury in determining a fact in issue." *Sexton v. State*, 93 S.W.3d 96, 100 (Tex. Crim. App. 2002); *Kelly*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).

In *Kelly*, the Court of Criminal Appeals set out three criteria that scientific evidence must meet to be reliable: "(a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question." 824 S.W.2d at 573. The Court also identified a non-exclusive list of factors that could influence a trial court's determination of reliability, including (1) the extent to which the theory and procedure are accepted as valid by the relevant scientific community; (2) the technique's potential rate of error; (3) the availability of experts to test and assess the method or technique; (4) the clarity and precision with which the underlying scientific premise and approach can be explained to the court; and (5) the knowledge and experience of the person(s) who applied the methodology on the occasion in question. *Id.*

Here, the State presented no evidence whatsoever to show the scientific reliability of the presumptive field test. Nor was any evidence offered as to the non-exclusive list of factors the trial court could consider in determining the

reliability of the evidence.[1]  Additionally, Phillips, who was never qualified as an

expert witness, was permitted to perform the presumptive test in front of the jury,

prior to which the following exchange took place:

> [Trial counsel]: The point I'm making, Judge, even with the results, it still doesn't mean anything without having some scientific testimony to show its reliability.
>
> [The Court]: And you can cross-examine this witness on that.  We already have a running stipulation that he's not going to be qualified under 702.  You opened the door.  He's going to be allowed to test it, if [the State] wants to test it, and then you can cross-examine him on the reliability if he knows.  He's an opinion witness only.

It is undisputed that Officer Phillips was not qualified as an expert witness to

perform the in-court demonstration, and that the State failed to prove by clear and

convincing evidence that the presumptive test was sufficiently reliable to assist the

jury.  *See Layton*, 280 S.W.2d at 240 (noting that it is trial court's duty to

determine whether scientific evidence offered is sufficiently reliable *before* it is

presented to jury).  Therefore, allowing Phillips's in-court demonstration of the

test before the jury was an abuse of discretion.

### Officers' Testimony

Officer Phillips testified at length regarding the procedure used to perform a

presumptive test for marijuana, the physical results of the test, and what the test

---

[1]    All three officers testified that they did not know the presumptive test's potential rate of error.

results mean, both in general terms and specifically in regard to Z.R. He testified that a red or blue color indicates the presence of marijuana and that the presumptive test he performed on the green substance obtained from Aguilar, the school's security officer, turned blue. Following his in-court demonstration, Phillips testified that because the liquid had turned blue, the substance was marijuana. Officer Dale testified that a substance turns red in the presumptive test if it is marijuana and brown if it is synthetic marijuana.

In *Smith v. State*, 874 S.W.2d 720 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd), this Court addressed the admissibility of a police officer's testimony about the performance and results of a field test. Convicted of possession of less than twenty-eight grams of cocaine, Smith argued on appeal that the trial court had erred in permitting the police officer to testify that the results of the field test he performed revealed the presence of cocaine. *See id.* at 721. At trial, the officer testified,

> The swabs are removed from the package, and they're—you run alcohol over them, make sure that there is no foreign substance on them—the cotton. And then, you place the swab in the crack pipe, or whatever you're testing. And if it turns blue, there's presence of cocaine, which is what happened here. *Id.*

The *Smith* court held that such testimony about the performance and results of a field test was expert testimony and, thus, the officer could not testify that the substance was cocaine. *See id.* However, the court also concluded that the officer

could testify about the procedure he used in performing the field test, and about the physical results of the test. *See id.* ("Thus, although we give no probative value to [the officer's] conclusion that because the cotton turned blue, cocaine was present, we do assign value to the remainder of his testimony.").

Here, Officer Phillips's testimony about the procedure he used in performing the original field test was likewise admissible. However, Officer Dale's testimony that a substance will turn red if it is marijuana, and Officer Phillips's conclusion that because the results of the original presumptive test and the in-court test turned blue, that marijuana was present, was expert testimony and therefore inadmissible.

### Harm Analysis

A violation of an evidentiary rule that results in the erroneous admission of evidence is non-constitutional error. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *Delane v. State*, 369 S.W.3d 412, 423 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). In considering non-constitutional error, an appellate court must disregard error if the court, "after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003). Assessment of the likelihood that the jury's decision was adversely affected by the error requires us to consider the entire record, including testimony or physical evidence admitted for the jury's consideration, the character of the alleged error, and how it might be

6

considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider any jury instruction by the trial court, the State's theory and any defensive theories, closing arguments, and voir dire, if material to the claim. *Delane*, 369 S.W.3d at 423.

In *Smith*, we found that the admission of the officer's testimony regarding the field test, although error, was harmless because the State had an expert chemist testify that the substance was cocaine. *See Smith*, 874 S.W.2d at 722.[2] Here, by contrast, the State presented no expert witness to testify about the test results.[3]

---

[2] Although they have no precedential value, the following cases support the *Smith* court's conclusion. *See Tovar v. State*, No. 07-07-0156-CR, 2009 WL 1066115, at *2 (Tex. App.—Amarillo Apr. 21, 2009, pet. ref'd) (mem. op., not designated for publication) (concluding that even if admission of non-expert police corporal's testimony that substance appellant possessed was cocaine was error, it was rendered harmless by expert chemist's testimony that substance was cocaine); *Williams v. State*, No. 01-02-00405-CR, 2003 WL 203567, at *7 (Tex. App.—Houston [1st Dist.] Jan. 30, 2003, pet. ref'd) (mem. op., not designated for publication) (any error resulting from police officer's testimony that field-tested crack pipe tested positive for cocaine was harmless in light of expert witness's subsequent testimony identifying substance found in pipe as cocaine); *Henderson v. State*, No. 01-95-00242-CR, 1996 WL 111848, at *4 (Tex. App.—Houston [1st Dist.] Mar. 14, 1996, no writ) (not designated for publication) (same).

[3] In *Kessler v. State*, No, 06-10-00150-CR, 2011 WL 317673, *4 (Tex. App—Texarkana Jan. 28, 2011, pet. struck) (mem. op., not designated for publication), the court found that error in admitting a police officer's testimony regarding field test results, and his opinion that the drug paraphernalia in the defendant's possession contained methamphetamine, was harmless even in the absence of expert testimony. *See id.* The court based its conclusion on the fact that the officer testified, without objection, that the defendant had admitted to him that the substance in question was methamphetamine, and that the defendant had been charged with possession of drug paraphernalia. *See id.* Here, however, the trial court granted the defense's motion to suppress Z.R.'s statement to Aguilar that the

Also, in contrast to *Smith* in which the officer ostensibly made a single inadmissible reference (i.e., because the cotton turned blue, cocaine was present), Officer Phillips's testimony repeatedly spoke to the presumptive test results—a color change indicates the presence of marijuana—both in general terms and specifically with regard to Z.R. Further, although not qualified as a Rule 702 witness, Officer Phillips gave the in-court demonstration of a presumptive test and testified yet again that the blue color established that the substance was marijuana. *Bagheri*, 119 S.W.3d at 764 (noting "powerful persuasive effect that 'scientific' evidence has on the average juror"). In this day and age where film and television have enormously popularized the use of modern science and technology to solve crimes, juries are particularly susceptible to forensic-science evidence such as that presented by the State in this case.[4] Finally, the State invited jury focus upon the test results of the in-court demonstration several times in its closing argument, emphasizing that it had proven that the substance was marijuana not only through

---

substance in the plastic bag was marijuana, so Z.R.'s admission was not evidence considered by the jury.

[4] *CSI: Criminal Scene Investigation* has been called the most popular television show in the world. *Juror Expectations for Scientific Evidence in Criminal Cases: Perceptions and Reality About the "CSI Effect" Myth,* The Honorable Donald E. Shelton, 27 T.M. COOLEY L. REV. 1 (2010) (citing BBC News, July 31, 2006, http://news.bbc.co.uk/2/hi/entertainment/5231334.stm; *CSI Earth's No. 1 Show*, N.Y. POST, June 17, 2008, *available at* http://www.nypost.com/p/entertainment/tv/item_WKDOqHHYXBgcnKFGWy2xa P).

the officers' testimony, "but also by a test, a chemical test, you have seen with your own eyes." *See Bagheri*, 119 S.W.3d at 763 (noting reviewing court should consider whether State emphasized error).

The majority concludes that any error in permitting the in-court demonstration and admitting the officers' testimony regarding the presumptive test results was harmless because of other evidence, independent of the evidence related to presumptive test results—namely, Officers Dale's and Phillips's testimony that they can identify marijuana based on its odor and appearance, their identification of State's Exhibit 2 as marijuana, and Aguilar's testimony that he believed the substance was marijuana. Notwithstanding this evidence, I do not believe that this Court can say with fair assurance that allowing the unreliable in-court demonstration and Officer Phillips's lengthy testimony regarding the performance and results of a field test in general, of the original field test, and of the in-court test, coupled with the State's emphasis on the in-court test results in its closing argument, did not influence the jury, or had but a slight effect. *See Bagheri*, 119 S.W.3d at 763; *see also Delane*, 369 S.W.3d at 423 (holding because officer was permitted to provide detailed and extensive testimony regarding appellant's prescription medications and their potential effects, and because testimony was unreliable, error in admitting testimony was not harmless). Indeed, as it is the very purpose of such demonstrative and testimonial evidence to impact

9

the jury, I cannot see how it would have done otherwise.  Because I believe those errors were harmful, I would reverse the trial court's judgment.  Therefore, I respectfully dissent.



                                        Jim Sharp
                                        Justice

Panel consists of Justices Keyes, Sharp, and Huddle.