**Opinion issued August 29, 2013.**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-11-00715-CV**

———————————

**IN THE MATTER OF Z.R., A CHILD**

---

**On Appeal from the County Court at Law No. 2**
**Fort Bend County, Texas**
**Trial Court Case No. 10-CJV-015951**

---

## MEMORANDUM OPINION

Z.R., a juvenile, was charged with possession of two ounces or less of marijuana in a drug-free zone. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.121, 481.134 (West 2010 & Supp. 2012). After the jury adjudicated him delinquent, the trial court sentenced Z.R. to twelve months' probation. On appeal,

Z.R. contends that: (1) the trial court erred in admitting testimony distinguishing marijuana from cush and describing the meaning of the test results of a presumptive test that was performed on State's Exhibit 2, which was the substance confiscated from Z.R.; (2) the trial court erred in allowing the State to perform an in-court presumptive test on State's Exhibit 2; and (3) the evidence was legally insufficient to support the jury's verdict. We affirm.

## Background

On August 25, 2010, Raymond Aguilar, a security officer at Foster High School in Richmond received an anonymous Crime Stopper tip that Z.R. may have marijuana in his possession. Aguilar went to Z.R.'s classroom, where he asked Z.R. to step outside and bring his belongings with him to Aguilar's office. When they arrived at Aguilar's office, Aguilar asked the assistant principal, Mr. Spates, to join them. Once Mr. Spates arrived, Aguilar told Z.R. that he had learned that Z.R. may have something on him that he should not have at school. Z.R. responded by unzipping his backpack, removing a pencil bag, and taking out a plastic bag containing a leafy substance. He also admitted the substance in the bag was marijuana.

Aguilar called Richmond Police Officer Sherman Phillips, the resource officer assigned to Foster High School, and gave Phillips the plastic bag. Based on its appearance and smell, Phillips believed the substance in the plastic bag was

marijuana. He took it to his office and tested a small portion of it with a marijuana field test kit, or presumptive test. Phillips testified that when he performed the presumptive test, the substance changed colors, indicating "[t]hat the substance was marijuana." Phillips then arrested Z.R. for possession of marijuana.

At a pre-trial hearing, the trial court granted Z.R.'s motion to suppress his oral admission that the confiscated substance was marijuana, but ruled that Phillips and Officer Joshua Dale of the Fort Bend Narcotics Task Force could offer their opinions as lay witnesses, under Texas Rule of Evidence 701, that the substance was marijuana. Z.R. also sought to exclude evidence concerning presumptive tests, arguing: "[N]o Texas court has ever allowed presumptive tests before a jury for any purpose." The State responded that it was not offering evidence of the presumptive test results to prove that the substance was marijuana, but for the limited purpose of rebutting Z.R.'s defensive theory that the substance was a then-legal synthetic substance commonly referred to as cush and not marijuana. According to the State, there is no presumptive test for cush, and the fact that the test changed colors rebutted the defense theory that the substance was cush. The trial court ruled that Dale would be permitted testify about "the presumptive test for . . . cush . . . but don't even go close to this marijuana." Once the trial began, Z.R. was granted a running objection to the officers' opinion testimony that the substance was marijuana and evidence about the results of the presumptive test.

3

At trial, Dale testified first. He testified that he had spent four of his sixteen years as an officer working on a narcotics task force, which investigates the sale, distribution, cultivation, and manufacture of illegal substances. Part of his job is to teach others how to recognize drugs. Dale was specially trained to identify marijuana and had substantial experience doing so in the field. He testified that he can identify marijuana by sight and smell and he described its physical appearance: budding organic green leafy material with stems and seeds, and a unique smell. He also explained that he had some field experience with cush, and that cush does not look or smell like marijuana. Rather, cush is granulated and loose and has a totally different odor.

Dale also testified that there is a presumptive test for marijuana—the liquid turns red if marijuana is placed in it—but that he is not aware of one for cush. During cross examination, Dale conceded that there are some problems with the reliability of a presumptive test. Specifically, Dale testified that results of a presumptive test for marijuana are not definitive, and that he did not know the presumptive test's rate of error. He further testified that there is a definitive lab test for marijuana, and that he did not know if State's Exhibit 2 had been tested in a lab, but that it was common practice not to send marijuana to the crime lab for testing.

Dale then physically examined State's Exhibit 2 and rendered the opinion based on its odor and appearance that it was marijuana. His testified that his opinion was based on his observation of the physical characteristics of State's Exhibit 2. In particular, Dale testified that he identified State's Exhibit 2 as marijuana because it is green and leafy with stems, it smells like marijuana, and it neither looks nor smells like cush. Dale distinguished the appearance of marijuana and cush, explaining that cush is "a very light, light brownish to green color."

Rosenberg Police Officer Jeremy Eder testified next. He had eleven years' experience as a police officer, and two of those were in the narcotics division. He had encountered cush on a few occasions but had no training on it. He testified that people try to pass off cush as marijuana, because they can resemble each other in appearance, but not odor. With respect to presumptive tests, he explained that there is a presumptive test for marijuana, there is not one for cush, and that, if one were to put cush in a presumptive test kit intended to test for marijuana, it would not come back positive (i.e., red or blue). Rather, the liquid would appear brown. Like Dale, Eder acknowledged that he did not know the rate of error for the presumptive test and that a lab test is more accurate than a presumptive test.

The final officer to testify, Phillips, had fourteen years' experience as a police officer and was assigned to Foster High School for the 2010–2011 school year. He testified that he has encountered marijuana many times during his

5

training and experience as an officer, and can identify marijuana by sight—"[by its] stems, seeds, [and by] how it's bunched up"—and by its distinct odor. Phillips also testified that, upon receiving State's Exhibit 2 from Aguilar, Phillips looked at it and formed the opinion based on its appearance and smell that it was marijuana.

Regarding presumptive tests, Phillips testified that there was one for marijuana, but that he was unaware of a presumptive test for cush. He further testified about the procedure for performing a presumptive test, the results of the test performed on State's Exhibit 2, and the significance of those results. Specifically, he testified that, after receiving it from Aguilar and identifying the substance as marijuana based on its odor and appearance, he performed a presumptive test on State's Exhibit 2, and that the test turned red or blue, indicating the substance was marijuana. On cross-examination, Phillips, like Dale, admitted that he was not a chemist, that he did not know the rate of error of the presumptive test, that the presumptive test was not always accurate, and that no laboratory test was performed on State's Exhibit 2 to confirm that it was marijuana. Phillips also admitted that the jury was unable to view the presumptive test that he performed on State's Exhibit 2 in the field because he threw it away.[1]

---

[1] The following exchange occurred between defense counsel and Phillips:

On re-direct, the State sought to have Phillips perform an in-court demonstration of the presumptive test on State's Exhibit 2, and, over defense counsel's objections, the trial court ruled that defense counsel had opened the door to it during cross-examination. Phillips then performed, before the jury, a presumptive test for marijuana on a sample from State's Exhibit 2 and the liquid turned blue.

The jury found that Z.R. had engaged in delinquent conduct, and the trial court ordered that Z.R. be placed on probation for twelve months. Z.R. appealed.

## Sufficiency of the Evidence

In his third point of error, Z.R. contends that the evidence is legally insufficient to support the verdict. Specifically, he argues that the conviction must be reversed because the State failed to offer the results of a definitive laboratory test confirming that State's Exhibit 2 was, in fact, marijuana.

### A.      Standard of Review

An appellate court reviews legal and factual sufficiency challenges using the same standard of review. *See Griego v. State*, 337 S.W.3d 902, 903 (Tex. Crim. App. 2011). "Under this standard, evidence is insufficient to support a conviction

---

DEFENSE COUNSEL: Would you agree with me that it sure would be nice if the ladies and gentlemen of the jury could look at [the presumptive test]?
PHILLIPS:              Yes, sir.
DEFENSE COUNSEL: But they are now denied that right because you threw it away?
PHILLIPS:              Yes, sir.

7

if considering all record evidence in the light most favorable to the verdict, a factfinder could not have rationally found that each essential element of the charged offense was proven beyond a reasonable doubt." *Gonzalez v. State*, 337 S.W.3d 473, 478 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)).  Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *Id.* at 479.

The sufficiency of the evidence is measured by the elements of the offense as defined in a hypothetically correct jury charge, which is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  If an appellate court finds the evidence insufficient under this standard, it must reverse the judgment and enter an order of acquittal. *Gonzalez*, 337 S.W.3d at 479.

**B.    Analysis**

The State bore the burden to prove beyond a reasonable doubt that Z.R. knowingly or intentionally possessed two ounces or less of marijuana.  TEX. HEALTH & SAFETY CODE ANN. § 481.121(a), (b)(1).  This, in turn, required proof that: (1) Z.R. exercised actual care, control, and management over the contraband; and (2) Z.R. had knowledge that the substance in his possession was contraband. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).

Z.R. contends an officer's identification of State's Exhibit 2 was insufficient to prove it was marijuana because a definitive lab test was required.  But the Court of Criminal Appeals has held otherwise: because marijuana has a distinct odor and appearance, chemical testing and expert testimony is not necessary to prove that a substance is in fact marijuana; instead, the substance may be identified through the lay opinion of a police officer or other witness.  *See Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002) ("It does not take an expert to identify the smell of marijuana[;] . . . [rather,] a witness who is familiar with the odor of marijuana . . . through past experiences can testify as a lay witness that he or she was able to recognize the odor.").  Moreover, the testimony of experienced officers can be sufficient evidence from which a jury can determine beyond a reasonable doubt that a substance is marijuana.  *See Boothe v. State*, 474 S.W.2d 219, 221 (Tex. Crim. App.  1971) ("The testimony from these experienced officers in the

9

narcotics division that the substance found in the building and in the automobile appeared to them to be marihuana was sufficient for the jury to determine that it was marihuana.").

Here, two police officers testified that they identified State's Exhibit 2 as marijuana based on its appearance and smell. Phillips testified that, with his training and experience as a police officer, he is able to identify marijuana by sight and by its distinct smell. He testified that when he received State's Exhibit 2 from Aguilar, he formed the opinion based on its appearance and smell that it was marijuana. Dale likewise testified that, through his training and experience as a police officer, he can identify marijuana by sight and smell. He, like Phillips, examined State's Exhibit 2 and rendered the opinion based on its odor and appearance that it was marijuana.[2]

Considering this evidence in the light most favorable to the verdict, we hold that a factfinder could have rationally found that each essential element of the charged offense was proven beyond a reasonable doubt, and, therefore, the evidence is legally sufficient to support the judgment. *See Osbourn*, 92 S.W.3d at

---

[2] Additionally, the jury heard evidence about Z.R.'s response to Aguilar's inquiry about whether Z.R. had anything on him that he should not have at school. Although the trial court had suppressed Z.R.'s oral admission that the substance was marijuana, the trial court did permit Aguilar's testimony that, in response to Aguilar's inquiry, Z.R. unzipped his backpack, removed a pencil bag from the backpack, and took out a plastic bag containing a leafy substance.

537 (permitting police officer who is familiar with odor and appearance of marijuana through past experiences to testify as lay witness that he was able to recognize substance as marijuana); *Boothe*, 474 S.W.2d at 221 ("The testimony of these experienced officers in the narcotics division that the substance found in the building and in the automobile appeared to them to be marihuana was sufficient for the jury to determine that it was marihuana."); *see also Williams v. State*, No. 01-08-00936-CR, 2010 WL 2220586, at *9–10 (Tex. App.—Houston [1st Dist.] June 3, 2010, pet. ref'd) (mem. op., not designated for publication) (holding evidence sufficient to support conviction for possession of marijuana because two officers testified, under Rule 701, that, based on their training, experience, and personal observations, the substance was marijuana); *In re J.H.*, No. 04-02-00464-CV, 2003 WL 21157245, at *1–2 (Tex. App.—San Antonio May 21, 2003, no pet.) (mem. op., not designated for publication) (finding sufficient evidence of possession of marijuana when juvenile, who was asked by school resource officer if he had anything he should not have, pulled foil-wrapped package from his shoe, officer testified he believed substance to be marijuana, took substance to his office, and its contents tested positive for marijuana).

We overrule Z.R.'s third point of error.

## Opinion testimony and presumptive test evidence

In his first and second points of error, Z.R. argues that the trial court committed reversible error when it (1) admitted testimony from Phillips and Dale distinguishing marijuana from cush and describing the meaning of the test results of a presumptive test that was performed on State's Exhibit 2; and (2) allowed Phillips to conduct a presumptive test on State's Exhibit 2 before the jury.

### A.    Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *See Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

### B.    Analysis

In his first point of error, Z.R. complains of the admission of the officers' testimony: (1) distinguishing marijuana from cush; and (2) describing the meaning of the results of the presumptive test. In his second point of error, Z.R. contends that the trial court erred by allowing Phillips to perform an in-court presumptive test on State's Exhibit 2. We will address these complaints in turn.

12

### 1.    Opinion testimony distinguishing marijuana from cush

Under Rule 701 of the Texas Rules of Evidence, a witness may testify in the form of an opinion "if the opinions or inferences are (a) rationally based on his or her perceptions and (b) helpful to the clear understanding of the testimony or the determination of a fact in issue." *Osbourn*, 92 S.W.3d at 535; *see also* TEX. R. EVID. 701. "Perceptions refer to a witness's interpretation of information acquired through his or her own senses or experiences at the time of the event (i.e., things the witness saw, heard, smelled, touched, felt, or tasted)." *Osbourn*, 92 S.W.3d at 535. Thus, a Rule 701 witness may testify about his or her "opinions, beliefs, or inferences as long as they are drawn from his or her own experiences or observations." *Id.* In *Osbourn*, the Court of Criminal Appeals held an officer's testimony regarding the identification of marijuana was admissible as a lay opinion under Rule 701 because her observation that the odor she smelled was marijuana did not require significant expertise to interpret, her observations were not interpreted based on a scientific theory, and her opinion was based on her perception and was helpful to the determination of a fact in issue. *Id.* at 537–38. The fact that she had training or experience detecting marijuana during the course of her employment did not preclude her from offering a lay opinion about something she personally perceived. *Id.* at 538–39.

Likewise, here, the opinion testimony of Phillips and Dale that State's Exhibit 2 was marijuana and was not cush did not require significant expertise to interpret and was based on their perceptions. Each testified that based on his experiences, he could identify marijuana because of its distinct odor and appearance. Dale also testified that he could identify cush and distinguish cush from marijuana because cush does not share the same distinct odor and appearance as marijuana. This testimony was based on the two officers' perceptions and was helpful to the determination of a fact in issue (i.e., whether Z.R. was in possession of marijuana). In short, the officers' opinion testimony that State's Exhibit 2 was marijuana, and not cush, based on the odor they smelled and the green, leafy substance they saw, was admissible as lay opinion testimony under Rule 701, and the trial court did not abuse its discretion in admitting this testimony.[3]

## 2. Presumptive test evidence and demonstration

Z.R. next asserts it was error to admit Phillips's testimony concerning the results of the presumptive test and to permit the in-court demonstration of the presumptive test on State's Exhibit 2. At trial, Z.R.'s defensive theory was that

---

[3] To the extent that Z.R.'s first point of error can be construed as alleging that the trial court erred in permitting Phillips to testify about *how* a presumptive test is performed, we likewise conclude this was not error. *See Smith v. State*, 874 S.W.2d 720, 721–22 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (holding that police officer could testify as lay witness under Rule 701 about procedure he used in performing presumptive field test).

State's Exhibit 2 was not marijuana but, rather, a then-legal synthetic substance commonly referred to as cush. To rebut this theory, the State sought to prove that there was a presumptive test for marijuana, but not one for cush, and that if cush was tested using the presumptive test for marijuana, the test would not change color.

With respect to presumptive tests, Dale testified that there is a presumptive test for marijuana, but that he is not aware of one for cush. Eder also testified that there is a presumptive test for marijuana, that there is not one for cush, and added that, if one were to put cush in a presumptive test intended to test for marijuana, it would not come back positive (i.e., red or blue). Rather, the liquid would appear brown. Finally, Phillips testified about the procedure for performing a presumptive test, the results of the test he performed on State's Exhibit 2 in the field, and the significance of those results—that the test turned red or blue, indicating the substance was marijuana. Phillips was also permitted to perform an in-court presumptive test on a sample taken from State's Exhibit 2 after the trial court ruled that defense counsel had opened the door to it during cross-examination by asking Phillips whether he thought it "would be nice if the ladies and gentlemen of the jury could look at [the presumptive test]," and having Phillips admit that the jury was "denied th[e] right [to view the presumptive test] because [he] threw it away."

15

We need not decide whether the admission of this evidence was error, because we conclude the errors in admitting it, if any, would not warrant reversal. Generally, the erroneous admission of evidence, including opinion testimony under Rule 701, is non-constitutional error governed by Texas Rule of Appellate Procedure 44.2 "if the trial court's ruling merely offends the rules of evidence." *James v. State*, 335 S.W.3d 719, 726 (Tex. App.—Fort Worth 2011, no pet.) (citing *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001)). A non-constitutional error must be disregarded unless it affects the defendant's substantial rights. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011); TEX. R. APP. P. 44.2(b) ("Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). The Rule 44.2(b) harm standard is whether the error in admitting the evidence "had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). When we consider the potential harm, the focus is not on whether the outcome of the trail was proper despite the error, but whether the error had a substantial and injurious effect or influence on the jury's verdict. *Barshaw*, 342 S.W.3d at 93–94. The *Barshaw* court explained:

> A conviction must be reversed for non-constitutional error if the reviewing court has grave doubt that the result of the trial was free from the substantial effect of the error. Grave doubt means that in the judge's mind, the matter is so evenly balanced that he feels himself in

16

> virtual equipoise as to the harmlessness of the error. In cases of grave doubt as to harmlessness the petitioner must win.

*Id*. at 94 (internal citations omitted). In assessing the likelihood that the jury's decision was improperly influenced, we consider the record as a whole, including testimony and physical evidence, the nature of the evidence supporting verdict, and the character of the alleged error and how it might be considered in connection with other evidence in case. *Id.* We may also consider the jury instruction given by trial judge, the state's theory, any defensive theories, closing arguments, voir dire, and whether the State emphasized the error. *Id.*

In cases in which an officer was erroneously permitted to testify about the meaning of the results of a field test on cocaine, courts have held any error in admitting such testimony is rendered harmless if an expert chemist testifies that the substance was in fact cocaine. *See Hicks v. State*, 545 S.W.2d 805, 809–10 (Tex. Crim. App. 1977) (concluding that any error in admission of officer's testimony that field test came back positive for cocaine was rendered harmless when qualified expert chemist testified that substance was cocaine); *Smith*, 874 S.W.2d at 722 (noting that any error in admission of officer's testimony regarding results of field test was rendered harmless by chemist's expert testimony that substance was cocaine); *Tovar v. State*, No. 07-07-0156-CR, 2009 WL 1066115, at *2 (Tex. App.—Amarillo Apr. 21, 2009, pet. ref'd) (mem. op., not designated for publication) (concluding that, even if admission of non-expert police officer's

17

testimony identifying substance possessed by appellant as cocaine was error, it was harmless because expert chemist testified substance was cocaine); *Williams v. State*, No. 01-02-00405-CR, 2003 WL 203567, at *7 (Tex. App.—Houston [1st Dist.] Jan. 30, 2003, pet. ref'd) (mem. op., not designated for publication) (finding that any error resulting from police officer's testimony that field-tested crack pipe tested positive for cocaine was harmless in light of expert witness's subsequent testimony identifying substance as cocaine).

In the context of marijuana, however, an experienced lay witness may identify the substance alleged to be marijuana as such, and no expert testimony of a chemist is needed. *See Osbourn*, 92 S.W.3d at 538 (noting it does not take an expert to identify marijuana because "[u]nlike other drugs that may require chemical analysis, marihuana has a distinct appearance and odor that are familiar and easily recognizable to anyone who has encountered it"); *see also Curtis v. State*, 548 S.W.2d 57, 59 (Tex. Crim. App. 1977) (experienced officer may be qualified to testify that a certain green leafy plant substance is marijuana, but not to testify that a powered substance is heroin or some other controlled substance). Accordingly, in the context of a harm analysis in a marijuana case, the testimony of a lay witness, including a police officer, that the substance is marijuana likewise may render harmless the admission of evidence about the meaning of presumptive test results.

18

Having reviewed the entire record as a whole, we conclude that the trial court's error, if any, in admitting the challenged evidence did not affect Z.R.'s substantial rights. The State adduced strong evidence, independent of any evidence related to presumptive test results, demonstrating that Z.R. was in possession of marijuana. In particular, Dale, a narcotics officer, first testified that he can identify marijuana by its distinctive appearance and odor. Then, after examining State's Exhibit 2 on the witness stand, Dale testified that, based solely on the appearance and odor of State's Exhibit 2 (as opposed to any test result), it was his opinion that State's Exhibit 2 was marijuana. Phillips, the school resource officer who participated in Z.R.'s arrest, likewise testified that he is able to identify marijuana by sight and smell. He testified that when he received State's Exhibit 2 from Aguilar, and before performing any presumptive test on the substance, he examined it and formed the opinion, based on its distinctive odor and appearance, that State's Exhibit 2 was marijuana. And, Phillips, in particular, refuted the defense theory that the substance was cush by testifying that the appearance of marijuana, which has stems, buds, and seeds, differs from that of cush, which is granular and has uniform particles.

Additionally, Aguilar testified that Z.R., by taking State's Exhibit 2 out of his backpack when Aguilar asked whether he had "something he should not have", indicated with his conduct that State's Exhibit 2 was illegal as opposed to the then-

19

legal cush. This testimony, together with the two officers' perception-based identifications of State's Exhibit 2 as marijuana, is strong evidence—independent of any evidence regarding presumptive tests—that State's Exhibit 2 was, in fact, marijuana.[4] *See Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002) (reiterating that evidence of defendant's guilt is one factor to be considered when determining whether improper admission of evidence was harmful).

Z.R. correctly notes that the State referred to the presumptive tests in closing, and that this is a factor that weighs in favor of finding harm. However, we also note that the State reminded the jury in closing that an officer's identification of a substance as marijuana, based solely on its odor and appearance, is enough to prove that the substance is in fact marijuana. The State then explicitly stated: "We are not required to give you two tests. We are not even required to give you one. So it comes down to the credibility of the officers."

Moreover, considering it in the context of the entire record, we believe the challenged evidence would not have been assigned much weight by the jury, despite its mention in closing argument. Importantly, all three officers admitted, during vigorous cross-examination, that there were numerous problems with the reliability of presumptive tests. Specifically, the officers conceded that: (1) they

---

[4] Additionally, the officers testified that it was consistent with policy not to send marijuana to the lab for testing, refuting Z.R.'s contention that the officers or the State had acted improperly by failing to do so.

are not chemists; (2) they did not understand the details of how the presumptive test works; (3) the presumptive tests yield false positives; (4) they did not know the rate at which the test yielded false positives; and (5) a lab test produces more reliable results than a presumptive test. *See Coble v. State*, 330 S.W.3d 253, 283 (Tex. Crim. App. 2010) (finding error in admission of expert testimony harmless in part because other expert witnesses refuted that testimony by characterizing expert's methodology as "unreliable and inconsistent with the standard of practice").

Accordingly, we conclude that any error in permitting the in-court demonstration and admitting the testimony about the presumptive test results did not have a substantial injurious effect or influence on the jury's verdict because: (1) there was ample other evidence—independent of any evidence relating to the presumptive test—supporting a finding that Z.R. was in possession of marijuana; (2) the same evidence—the identification of State's Exhibit 2 as marijuana—was admissible and admitted through Dale's and Phillips' testimony that they each identified State's Exhibit 2 as marijuana based on its odor and appearance (and not based on the results of a presumptive test); (3) the reliability of the presumptive test results was undermined through cross-examination, and (4) although the State discussed the results of the presumptive test during closing, the State repeatedly reminded the jury that State's Exhibit 2 was identified by two officers as marijuana

21

based on its appearance and odor, and that this identification alone was enough. We hold that, on this record, any error in admitting the testimony relating to the results of the presumptive test and the in-court demonstration did not affect Z.R.'s substantial rights and, therefore, was harmless. *See id.* at 286 (holding error in admitting expert's testimony about defendant's character for violence was harmless because (1) there was ample other evidence supporting finding that defendant would commit future acts of violence; (2) same evidence was admitted through other independent sources; (3) expert's opinion was not particularly strong or certain; (4) expert's testimony was effectively refuted through testimony of another expert; and (5) although State mentioned expert's testimony in closing, State did not emphasize it); *McRae v. State*, 152 S.W.3d 739, 744–45 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (holding error in admitting testimony about improperly administered field sobriety test harmless despite being mentioned in closing argument and sponsored by expert witness where it was cumulative of other more persuasive evidence establishing intoxication).

We overrule Z.R.'s first and second points of error.

**Conclusion**

We affirm the judgment of the trial court.

Rebeca Huddle
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Justice Sharp, dissenting.